Oliver *v.* Pate.

## OLIVER *v.* PATE.

BILL OF EXCEPTIONS.—*Time of Filing.*—Where sixty days were given within which to file a bill of exceptions, and the bill was signed by the judge within that time, and, though it was copied into the record, it did not appear by any statement in the body of the record that it was ever filed, but the certificate of the clerk of the court below, given within the sixty days, stated that the record was a full, true, and complete transcript of all the proceedings had in the case, as the same appeared of record, and of papers on file in his office;

*Held,* that it affirmatively appeared that the bill of exceptions was filed prior to the date of the certificate and within the time allowed by the court.

EVIDENCE.—*Witness.*—*Impeachment of.*—Where witnesses testified, on examination in chief, that the general character of a party for truth, veracity, and honesty was good, it was incompetent to ask them, on cross-examination, if they had heard certain of his neighbors say that the sheriff of a certain county

Oliver *v.* Pate.

had come to arrest him for larceny on a warrant issued on an indictment found against him in that county.

SAME.—*Malicious Prosecution.—Probable Cause.*—In an action for damages for malicious prosecution, evidence of the general bad character of the plaintiff for morals is inadmissible to rebut evidence of want of probable cause.

SAME.—*Malice.*—The existence of malice is not imputed as a conclusion of law, but may be inferred as a fact from the want of probable cause. It is for the jury to determine whether they will so infer it or not.

SAME.—*Jury.*—A jury must consider all evidence introduced, decided to be admissible by the court.

SAME.—A jury have the right to disregard the evidence of a witness, in whole or in part, if they deem him unworthy, although his character for truth and veracity may not have been directly impeached, though they ought not to do so wantonly, without evidence or cause.

SAME.—*Confidential Communications.—Attorney and Client.—Prosecuting Attorney.—Waiver.*—Communications made to a prosecuting attorney relative to criminals or suspected persons are privileged, and cannot be divulged without the consent of the person making them. The immunity from disclosure of communications so made is a privilege personal to the one making them, which is not waived by his voluntarily testifying generally, in an action against him for malicious prosecution, in his own behalf, but is waived, if, being a witness in his own behalf, he voluntarily discloses what statements he made to the prosecuting attorney, who then may testify in relation to the communication.

From the Montgomery Circuit Court.

*T. Patterson, M. D. White,* and *J. Wright,* for appellant.

*J. McCabe* and *J. M. Butler,* for appellee.

OSBORN, J.—The only error assigned in this case is in overruling the motion for a new trial.

The action was brought by the appellee against the appellant for malicious prosecution. There was an issue of fact, trial by a jury, verdict for appellee for four hundred and thirty-nine dollars and fifty cents, and judgment on the verdict over a motion for a new trial filed by appellant.

Judgment was rendered on the 17th day of September, 1870, and sixty days were allowed the appellant to file his bill of exceptions. It appears to have been signed by the judge on the 27th day of October, but there is no statement in the body of the record showing that it was ever filed in the clerk's office in the cause. It has been held by this court, that it must appear affirmatively that the bill of excep-

tions was filed within the time allowed by the court, or it will not be regarded as forming a part of the record, although copied into it. This case was once considered by us and the judgment affirmed, without passing upon the alleged error of the court, on the ground that the bill of exceptions was not properly in the record. A petition for a rehearing was filed, calling our attention to the fact that the certificate of the clerk to the transcript was dated November 5th, 1870, which was within the sixty days, and we granted the petition.

The appellee again insists that under the uniform rulings of the court we can not recognize the bill of exceptions as forming a part of the record, and many decisions are cited to sustain him. The rule, that it must appear affirmatively that it was filed within the time allowed, is too well established to need the citation of any authority in its support. The certificate of the clerk, however, states that the record is a full, true, and complete transcript of the proceedings had in the case, as the same appear of record and of papers on file in his office. We think that sufficiently shows that the bill of exceptions, which is copied into the record, was filed prior to the date of the certificate and within the time allowed by the court.

We do not consider it necessary to state all the reasons assigned in the motion for a new trial. They were sufficient to fairly raise all the questions discussed and passed upon.

One of the reasons stated is, in excluding the legal evidence of certain witnesses named. The appellant had introduced witnesses to impeach the character of the appellee, and he had examined witnesses to sustain it, those named being of the number. They had testified, that they were acquainted with the general character of the appellee in his neighborhood for truth, veracity, and, honesty, and that it was good. The bill of exceptions states that the appellant offered to prove by cross-examination of those witnesses, that they had heard certain of his neighbors say that the sheriff of Henry county had come there, for the purpose of

Oliver *v.* Pate.

arresting him for larceny, on a warrant issued on an indictment found against him in that county; and the court, on the objection of the appellee, refused to permit him to introduce the proof. The purpose of the proof was not stated. The witnesses, in their examination in chief, had testified to the general character of the appellee, and nothing else. The proof offered was not legitimate as a cross-examination and would have laid no foundation for impeaching the witnesses. No time, place, or names of persons were mentioned. It was about a collateral and irrelevant matter, not affecting the general character of the appellee. It was a naked proposition to prove that the witnesses had heard the statement and nothing more. There was not even a charge that he was guilty, or that anybody in his neighborhood ever charged, suspected, or believed that he was. We are at a loss to see on what ground the proof was admissible. Its only effect, we think, would have been to improperly prejudice the jury against the appellee. The right to ask the witnesses whom they had heard speak about the character of the appellee, and whether what they had heard said was for or against him, is not denied by the appellee. Under some circumstances he might go further and ask other questions. It is difficult, if not impossible, to lay down specific rules to control or limit the cross-examination of witnesses. The judge before whom the case is tried must, to a considerable extent, determine it, and in doing so, must be governed by the circumstances attending the examination. Of course, his action is subject to the supervision of an appellate or superior court, in all cases when an appeal lies. In the case at bar, there is no statement in the bill of exceptions showing the circumstances under which the proof was offered, only, as we have seen, the offer to prove the fact. We think the court committed no error in rejecting the evidence.

Another reason was, that certain improper instructions prepared by the court were given to the jury. The jury were instructed, that they had the right to disregard the evi-

dence of any witness, in whole or in part, if they deemed him unworthy of belief, although the witness's character for truth and veracity might not have been directly impeached ; that if they found there was an absolute conflict in the evidence, they should then carefully weigh it ; and that they were the exclusive judges of the evidence and of its weight and the credibility of witnesses. The appellant objects to the instruction, on the ground that it should have gone further and told the jury that they must not disregard the testimony of a witness, unless there was. evidence to justify them in so doing, and, also, that they should have been told what to do with the evidence after they had weighed it. The instruction, so far as it leaves the credibility of the witnesses to the jury, is not objectionable. The jury have the right to disregard or reject the testimony of a witness, if from his deportment on the stand or other evidence before them, they deem him unworthy of belief. They ought not to do it wantonly and without evidence or cause. In this case, as we have seen, there was evidence tending to impeach at least one witness. In addition to that, there was conflicting and contradictory testimony in the case. There was evidence before the jury from which they would be authorized, *if not required,* to reject the testimony of some of the witnesses. We do not think the instruction calculated to mislead the jury or leave them in doubt as to its meaning. From it, they would understand that they were to disregard the evidence of such of the conflicting or impeached witnesses as they, after carefully weighing all the evidence, deemed unworthy of belief. They would also understand that the object of considering or weighing the evidence was, to determine the credit it was entitled to in agreeing upon a verdict. If the appellant thought the instruction not sufficiently explicit, or if he desired a further instruction, he should have asked a modification or an additional charge.

The fourth instruction is as follows: " The prosecutor must also prove that the prosecution was instituted maliciously. In a legal sense, any unlawful act done wilfully and

Oliver *v.* Pate.

purposely, to the injury of another, is, as against that person, malicious; and malice in the sense of the law, does not presuppose personal hatred or revenge, but may be implied under certain circumstances from a total want of probable cause, or from a gross and culpable omission to make suitable and reasonable inquiry; and, as before stated, both want of probable cause and malice must be shown to exist, to entitle the plaintiff to recover. Malice is a question of fact for the jury, *who may infer it from a want of probable cause, though they are not bound to do so."*

The appellant objects to the words in italics in that charge. He insists that they should have been qualified, so that the jury would not be left at liberty to infer malice in the absence of circumstances tending to establish its existence.

We think the court committed no error in giving the instruction. The distinction between a conclusion or inference of law and fact was recognized. If the law imputed malice to the party on proof of want of probable cause, then the jury would be bound to infer it; but as it is one of fact, and not of law, it is for them to say whether they will so infer or not. As was said in *Wilkinson* v. *Arnold,* 11 Ind. 45, "malice may be inferred from the want of probable cause, as a matter of fact, but no such inference arises as a matter of law. The jury may draw such inference, if they see proper, * * * but they are not in law bound to do so." *Newell* v. *Downs,* 8 Blackf. 523; *Ammerman* v. *Crosby,* 26 Ind. 451. In *Farmer* v. *Darling,* 4 Bur. 1971, Lord Mansfield recognized implied as well as express malice in an action for malicious prosecution, and the other judges concurred in it. Want of probable cause and malice must both exist, in order to sustain the action; still, in the mode of proving them, there is a well established difference. The want of probable cause cannot be inferred from any degree of malice, but malice may be inferred from want of probable cause. 1 Hilliard Torts, 420, sec. 10.

In connection with this charge we will consider an instruction, asked by the appellant, that " the action should not be

maintained without proof of rank and express malice and iniquity on the part of the defendant, in commencing the state prosecution," and refused by the court. It will be seen that it is in conflict with the authorities referred to. It was predicated, undoubtedly, upon note *a*, 1 Hilliard Torts, 416, containing an extract from the opinion of Lord Chief Justice HOLT in *Savill* v. *Roberts*, 12 Modern, 208 (referred to in the note as the 13th). After discussing the question as to when the action would lie and referring to such cases, he says, on page 211 : "But though this action does lie, yet it is an action not to be favored, and ought not to be maintained without rank and express malice and iniquity." But it has been long settled that malice may be implied, and express malice need not be proved. Malice in fact is that kind of malice which is proved. When malice may be and is inferred from the want of probable cause, it is actual malice which is thus proved." *Vanderbilt* v. *Mathis*, 5 Duer, 304.

The appellant asked an instruction, that, to entitle the plaintiff to a verdict, malice must be proved to have actuated the defendant in commencing the action, and that it is an independent fact which must be proved, *and cannot be inferred as a conclusion of law.* The court gave the charge as asked, omitting the words in italics. The jury had already been told that they were not bound to infer malice, which, we think, was equivalent to stating that it was not a legal conclusion. They were told in the charge drawn by the court, that they were not bound to infer malice generally, which included both the inference of law and fact. It was not necessary to repeat it in another form.

Another instruction asked by the appellant in substance stated, that evidence of the general bad character of the plaintiff for morals in the neighborhood, etc., was admissible to rebut the evidence of want of probable cause; and if they believed it to have been bad at the time the prosecution was commenced against him, that fact should be taken

Oliver *v.* Pate.

into consideration by the jury. The court gave the charge as asked, substituting the word "may" for "should."

The appellee took no exception to the instruction. The appellant, however, insists that he was injured by the charge. We are unable to see any real difference in the instruction as asked and given. The evidence was before the jury, and they were told that it was admissible for the purpose stated, and that they might consider it. It seems to us that it is the same as if they were told that they must do so. It is entirely different from a conclusion, or inference, which may or may not be drawn by the jury. When they were told that certain evidence before them was admissible for a purpose stated, that of itself was equivalent to telling them that they must consider it; and the further statement that they might or must do so was unnecessary. We find no error in the charges given, or in refusing or modifying those asked.

There is one other question in the case, and that is in permitting a witness to testify without the consent and over the objection of the appellant. One of the attorneys for the appellee in the court below, but whose name does not appear in this court, was prosecuting attorney in Montgomery county, at and before the commencement of the prosecution against the appellee. The appellant called upon him as such prosecutor to institute the prosecution against the appellee, and, as he testified, made a statement of the facts to him. At his request, the prosecuting attorney drew the affidavit upon which the prosecution was based, and prosecuted the appellee before a justice of the peace, where he was discharged. This action was for that prosecution. Before the next term of the Montgomery Circuit Court, that same attorney commenced this action. At the time of commencing the action, he continued to be prosecuting attorney. On the trial, the appellant was a witness in his own behalf, and voluntarily testified to the statement made by him to the prosecuting attorney, and professed to state fully all that was said. After the close of his evidence, and as rebutting evidence, the appellee offered the attorney, to whom the appel-

ant had made the statement before mentioned, as a witness, to prove what the statement was and their conversation at the time. The appellant objected to his testifying on that subject, because the statement was a confidential communication between him and the prosecuting attorney, whilst he was seeking to bring a state prosecution, that ought not to be disclosed; that the relation of attorney and client virtually exists between a prosecuting attorney and those who come to him to institute criminal proceedings against others or take advice in relation to such matters. The objection was overruled, and the witness testified in relation to the conversation and what it was. His testimony was different from that of the appellant.

The appellee denies that any such confidential relations existed as to make the communication privileged. He insists that the prosecuting attorney is not the attorney of the party seeking to prosecute one charged with a criminal offence or making statements of facts to aid in the prosecution of criminals. In *Reed* v. *Smith*, 2 Ind. 160, it was held that it was not necessary that a fee should be paid to make the communication privileged. If the statement was made to an attorney in regard to the subject-matter of a suit, with a view to employing him as an attorney, it was sufficient to establish the relation of attorney and client. In *Jenkinson* v. *The State*, 5 Blackf. 465, it was held that when an attorney is consulted on business within the scope of his profession, the relation of attorney and client exists, and the communications on the subject between him and his client should be treated as strictly confidential. The same doctrine is held in *Bower's Adm'r* v. *Briggs*, 20 Ind. 139. The decisions of different courts are not harmonious on the question. We refer to those of two states only. In New York, it has been held that the communication must relate to an action pending or anticipated. *Whiting* v. *Barney*, 30 N. Y. 330. In Massachusetts, it has been held that it extends to all communications made to an attorney or counsellor, applied to by the party in that capacity with a view to obtain his legal, advice and opinion in

matters of law in relation to his legal rights and obligations, whether with a view to the prosecution or defence of a suit, or other lawful subject. *Foster* v. *Hall,* 12 Pick. 89. The rulings of this court are in harmony with the Massachusetts court, and it seems to us they are sustained by reason. The communication is made for the purpose of getting legal advice in relation to some right or obligation, upon which to predicate some action of the party; and thus the relation of attorney and client is created, although no action is pending or anticipated. It is just as important that the communication should be confidential and secret, and its disclosure might affect his rights quite as much, as if it was made with reference to an action, and to disclose it would equally violate the confidence reposed in the attorney. Communications are made to attorneys and advice given, based upon such communications, concerning matters of the highest importance, about which no action is pending or anticipated.

To come more directly to the question before us; the State furnishes an attorney to prosecute all persons charged with crime. It is essential that he should be furnished with facts to enable him to successfully prosecute. Every good citizen, it is presumed, will aid in the conviction of offenders and communicate to the prosecuting attorney all the facts within his knowledge, tending to establish the guilt of such offender; and all such communications and statements made to him must be considered and held to be privileged, and must not be divulged without the consent of the party making them. The fact that the State furnishes the attorney can make no difference. The statement is made to one, who for the time being and for that purpose occupies the position of legal adviser. And that must determine the question, and not who selects or employs him. The prosecutor acts as attorney and receives the communication in that capacity. Public policy requires that a person in making communications to a prosecuting attorney, relative to criminals or persons suspected of being guilty of crime, should be at liberty to make a full statement to him without fear of disclosure.

" There are some kinds of evidence which the law excludes or dispenses with, on grounds of public policy; because greater mischiefs would probably result from requiring or permitting its admission, than from wholly rejecting it." 1 Greenl. Ev., sec. 236.

The appellee claims that even if the communication was privileged, the appellant, by voluntarily testifying in his own behalf, lost the privilege.   He cites *King* v. *Barrett,* 11 Ohio St. 261.   That case was decided upon a statute of that State.   One section (310) of the code of Ohio provides, that " no person shall be disqualified as a witness in any civil action or proceeding, by reason of his interest in the event of the same, as a party or otherwise."   And section 315 of the same code provides, that " if a person offer himself as a witness, that is to be deemed a consent to the examination also of an attorney on the subject."   The decision was based entirely upon the section last quoted.   We have no such statute.

The appellant was a witness on the trial of the case, in his own behalf, and voluntarily testified to his communication to the attorney, which he claims was privileged.   Did that remove the injunction of secrecy ?   The object of extending to him the privilege is, that his communications shall not be disclosed without his consent.   It is a personal privilege, and if he makes the disclosure himself, and undertakes to tell what statement he made to his attorney, it ceases to be a secret.   Having opened the door himself by testifying to what took place between himself and his counsel and to the communications between them, he has made it public and thus consented that the attorney may testify in relation to it.   It is no·longer a secret, any more than if the statement had been made to his attorney in the presence and hearing of others, and with the avowed purpose that it should be heard by them.   In such a case it could not be said that the communication was confidential, although made with the purpose of getting legal advice and to enable the attorney to give it.   He would be asking advice on a public state-

The Indianapolis and St. Louis R. R. Co. *v.* Christy.

ment of facts. In *Parker* v. *Carter*, 4 Munf. 286, the court said that all communications made by a client to his attorney were to be regarded as confidential, "unless, indeed, the client should seem to vaunt his disclosures to the public, and, as it were, challenge the by-standers to hear them."

What we hold on the last question is this: If the party voluntarily testifies as a witness to confidential communications made to his attorney, he thereby destroys the privileged character of the communication and consents that the attorney may be a witness and testify in relation to the same communication, and state all that was said on that subject. We do not decide that he gives such consent by voluntarily testifying in the action generally. It is because he testifies and voluntarily discloses the confidential communication, that he waives the privilege and consents that the attorney may be a witness against him, and not because he testifies as a witness in the cause.

Whilst we decide that the testimony was admissible, we cannot approve the conduct of the attorney in bringing the action. He was the public prosecutor, and as such it was his duty to prosecute all offenders. By bringing this action before the meeting of the grand jury, he placed himself in antagonism to the State, and where he was liable to be tempted to neglect the discharge of his official duty.

The judgment is affirmed, with costs.