IN THE MATTER OF JOSEPH A. NOEL.

[No. 974S177. Filed July 15, 1976.]

*James V. Donadio, G. Daniel Kelly, Jr.,* of Indianapolis, for respondent.

*Richard H. Grabham,* Executive Secretary, *John D. Cochran,* of Indianapolis, for the Indiana Supreme Court Disciplinary Commission.

PER CURIAM—This is a disciplinary proceeding before this Court on a six-count amended complaint filed by the Indiana Supreme Court Disciplinary Commission against the respondent in this cause. By stipulation of the parties, Count VI of the complaint has been dismissed. A Hearing Officer was appointed in this cause, the cause was heard, and the Hearing Officer's Report, Findings of Fact and Recommendations have been filed and are now before this Court for consideration. In addition, we have before us the Disciplinary Commission's Petition for Review under Admission and Discipline Rule 23, Section 15(a), "Respondent's Brief in Opposition to the Commission's Petition for Review and in Support of the Hearing Officer's Findings of Fact and Recommendations," "Respondent's Petition for Oral Argument" and Respondent's supplemental brief in opposition to the petition for review.

The Court, having considered the foregoing matters, now denies the Commission's petition as to the Hearing Officer's report and findings of fact, but grants this petition for review

as to the Hearing Officer's recommendation. Respondent's Petition for Oral Argument is hereby denied. Being duly advised, we now adopt and accept the hearing officer's findings of fact as our own in this cause.

The findings of fact which establish misconduct under Counts I, II, and IV of the amended complaint are as follows:

## COUNT I

1. The Respondent, Joseph A. Noel, was admitted to practice law in the State of Indiana during the year 1940, and has actively engaged in the practice of law from the time of his admission to date, maintaining law offices in Kokomo, Indiana.

2. At the beginning of his practice of law and until sometime in 1963, the Respondent handled all funds belonging to his clients as "trust funds" and deposited all such funds into a bank checking account designated as "trust account." But, thereafter, the Respondent kept cash in a Schwab safe in his home and also kept cash in a safety deposit box at a bank in Kokomo.

3. It was the belief of the Respondent that he had three trust depositories, viz., (i) the bank checking account, (ii) the bank safety deposit box, and (iii) the Schwab safe in his home. So long as the aggregate sum of the total amounts in each of the three depositories exceeded his trust obligations, the Respondent believed that he was adequately and properly discharging his obligations to his clients for their funds. Substantial amounts of cash were kept in both the safe and the safety deposit box. E.g., the following tabulation will illustrate the Respondent's method of handling trust funds, as well as the total amounts in each of the depositories and the total amounts of his trust obligations.

4. The only evidence of the amounts in two of the three depositories, viz., the Schwab safe and the safety deposit box, was the testimony of the Respondent. Voluminous records were received in evidence, from which inference

| Date | Trust Obligations | Bank Account | Safety Deposit Box | Schwab Safe |
|------|------------------|--------------|--------------------|-------------|
| 3-16-72 | $172,125.17 | $23,258.25 | $82,500.00 | $86,500.00 |
| 3-31-72 | 194,686.99 | 25,820.05 | 82,500.00 | 86,500.00 |
| 4-30-72 | 195,586.93 | 26,746.22 | 82,500.00 | 86,500.00 |
| 5-31-72 | 139,203.08 | 39,715.04 | 82,500.00 | 17,500.00 |
| 6-30-72 | 139,603.93 | 40,142.12 | 82,500.00 | 17,500.00 |
| 7-31-72 | 137,057.00 | 37,620.54 | 82,500.00 | 17,500.00 |
| 8-31-72 | 131,096.54 | 31,685.43 | 82,500.00 | 17,500.00 |
| 9-30-72 | 143,859.57 | 44,473.81 | 82,500.00 | 17,500.00 |
| 10-31-72 | 129,430.55 | 30,070.14 | 82,500.00 | 17,500.00 |
| 11-30-72 | 160,543.91 | 50,858.85 | 82,500.00 | 27,850.00 |
| 12-31-72 | 161,416.88 | 51,757.17 | 82,500.00 | 27,850.00 |
| 1-31-73 | 131,876.52 | 22,242.16 | 82,500.00 | 27,850.00 |
| 2-28-73 | 113,346.11 | 21,612.10 | 82,500.00 | 9,850.00 |
| 3-31-73 | 115,456.52 | 23,872.86 | 82,500.00 | 9,850.00 |
| 4-30-73 | 122,512.52 | 30,829.21 | 82,500.00 | 19,850.00 |
| 5-31-73 | 121,478.97 | 19,946.01 | 82,500.00 | 19,850.00 |
| 6-30-73 | 113,713.56 | 15,569.45 | 82,500.00 | 19,850.00 |
| 7-31-73 | 109,011.58 | 11,892.82 | 82,500.00 | 19,850.00 |
| 8-31-73 | 108,564.77 | 22,871.36 | 66,500.00 | 19,850.00 |

must be drawn and compared with the testimony of the Respondent. The Disciplinary Commission takes the position that proper inferences demonstrate that the funds in the Schwab safe and the safety deposit box were either not in those depositories at all or, if there were funds in those depositories, they were never adequate, when added to the total of the funds in the bank trust account, to enable the Respondent to return to his clients all of the money delivered by them to him in trust. Whereas, the Respondent takes the position that the funds were in the Schwab safe and the safety deposit box and when added to the funds in the bank trust account, were adequate at all times to enable the Respondent, at any time, to return to his clients all of the money delivered by them to him in trust. The Hearing Officer and Judge believes the testimony of the Respondent with regard to the amounts of cash in the Schwab safe and the safety deposit box. Moreover, it was

stipulated by the Disciplinary Commission and the Respondent—"That no client of Joseph A. Noel has ever failed to receive funds which Joseph A. Noel held as Trustee." Nonetheless, at all times—while the Respondent was maintaining these three depositories, he had complete dominion and control over the funds in the safety deposit box and the Schwab safe. E.g., from and after May, 1963, until August, 1973, the safety deposit box contained $82,-500.00 in cash. When that cash was first placed in the safety deposit box, all of that money belonged to the Respondent and was his own personal property. Some of the cash in the Schwab safe, when placed therein, belonged to the Respondent and was his own personal property. In some instances, checks were drawn on the bank trust account for the personal use of the Respondent. It was admitted by the Respondent that he could have removed all or any part of the cash from the safety deposit box and he could have removed all or any part of the cash from the Schwab safe at any time for any purpose. But no such cash was ever removed from either of those depositories for the personal use of the Respondent.

5. By commingling trust funds belonging to his clients with his own funds, the Respondent violated Canon 11,[1] DR 1-102(A)(6), and DR 9-102(A). The Respondent did not knowingly misapply entrusted property in violation of Burns Indiana Statutes, Annotated, Volume 4, Part 2 (1956 Replacement), IC 35-17-5-11. The Respondent did not misapply, convert, misuse, or use for his own benefit, funds or money belonging or attributable to his clients and held in trust by him as fiduciary in violation of Burns Indiana Statutes, Annotated, Volume 4, Part 2 (1956 Replacement), Title 10 Section 3030 (1975 Cumulative Supplement), IC 35-17-5-3.

---

1. The Hearing Officer's reference to Canons refers to the Canons of Professional Ethics of the American Bar Association.

## COUNT II

1. The Respondent acted in a fiduciary capacity in three different matters, viz., Personal Representative in the Shockney Estate, Personal Representative in the Armstrong Estate, and Guardian of the Estate of Blanche Colby. Although—as such fiduciary—he held funds belonging to each of said Estates, the Respondent did not invest any of such funds of any of said Estates. While there is no statutory duty requiring an executor or administrator to invest the funds of an estate [IC 29-1-13-14], there is a statutory duty requiring the guardian of an estate to invest the funds of the estate [IC 29-1-18-28(b) and IC 29-1-18-34]. A guardian of an estate has the statutory duty to invest the property of the ward, to make the trust property productive, and to keep the trust property separate from his individual property and separate or clearly identifiable from property subject to another trust [IC 29-1-18-34 and IC 30-4-3-6(b) (5) & (6)].

2. The Respondent also commingled the funds of the Colby Guardianship Estate with his own funds and with other trust funds. The funds in this Guardianship Estate were not invested, were not made productive, and were not kept separate from the Respondent's individual property, nor separate and clearly identifiable from property subject to other trusts.

3. By this conduct—in the Colby Guardianship, but not in the Shockney or Armstrong Estates—the Respondent violated Canon 11, DR 1-102(A) (6), and DR 6-101(A) (3).

## COUNT IV

1. Respondent was the Attorney and the Personal Representative in the Estate of Grace Shockney. This Estate was opened on November 20, 1968, the Inventory was filed on April 23, 1969, and the Estate closed February 6, 1973. This decedent died testate, bequeathing and devising property to her two sons. These beneficiaries retained an attorney

in Tipton to take whatever steps were necessary to avoid selling a farm—the principal asset of the Estate. By design, the Estate was held open for the accumulation of income from the farm to enable one of the sons to purchase the farm and for the purpose of acquiring funds to pay Federal Estate Tax and Indiana Inheritance Tax, which had not been paid on the death of the decedent's husband who predeceased her. By 1971, the two sons had reached an agreement whereby one was to operate the farm to obtain the rents and profits and the other son was to occupy the residence rent free. There was also disagreement between the sons about the collection of notes executed by the children of one of the sons to the decedent and about the division of household goods. The Tipton attorney, in behalf of the sons, filed a Petition to Remove the Respondent as Executor, but no hearing was ever held or any action ever taken thereon. One of the sons filed a Petition for an Interim Account, which was granted. The Respondent failed to file the interim account within the time ordered and a Rule to Show Cause was issued to him. The interim account was never filed, but the Respondent filed a Final Account within sixty days of the date the interim report was ordered filed. The discount on the payment of the Inheritance Tax was lost. Interest and penalty, in an amount not revealed by the evidence,[1] were paid by the Respondent out of his own funds and not from the funds of this Estate. The Respondent reduced his fee in this Estate by $1,000.00—the amount paid by the sons to the Tipton attorney for his services in their behalf in this Estate. By his conduct as Attorney and Personal Representative in this Estate, the Respondent violated DR. 1-102 (A) (5), DR-6-101 (A) (3), and DR 9-102 (B) (3).

The above detailed findings of fact having been adopted and accepted by the Court, we now accordingly find that under Count I of the complaint, the respondent violated Disciplinary

---

1. The Estate Tax was $18,000 plus, and the Inheritance Tax was $3,104.18.

Rules 1-102(A)(6) and 9-102(A); under Count II, the respondent violated Disciplinary Rules 1-102(A)(6) and 6-101(A)(3); and under Count IV, the respondent violated Disciplinary Rules 1-102(A)(5), 6-101(A)(3) and 9-102(B)(3)

Having found misconduct in this case, it now becomes the duty of this Court to determine the appropriate disciplinary sanction to be imposed, taking under consideration the nature of the ethical violation, the specific acts of the respondent, and this Court's responsibility to preserve the integrity of the Bar of the State of Indiana. We also consider the risk, if any, to which we will subject the public by permitting the respondent to continue in the profession or to be reinstated at some future date, as well as the deterrent effect the imposition of discipline has on the Bar in general. *In re Lee* (1974) 262 Ind. 439, 317 N.E.2d 444.

The Hearing Officer appointed in this case has recommended that the respondent be censured, given a public reprimand and allowed to continue his practice of law without interruption. We do not believe that such proposed discipline is sufficient to meet the gravity of the misconduct found in this case nor is it sufficient to have the desired deterrent effect.

The respondent in this cause has been found guilty of commingling, neglecting legal matters entrusted to him, and failing to make an appropriate record and accounting of client's funds. All three of these incidents concern the handling of client's money and, taken in total, establish a pattern of conduct abhorred by this Court. The fiduciary relationship of a lawyer to his client involves trust. There is no surer way to undermine this trust than to become involved in questionable and unethical conduct in dealing with funds that belong exclusively to a client. This type of misconduct reflects adversely upon a lawyer's fitness to continue the practice as well as brings severe discredit to the legal profession.

With the foregoing considerations in mind, by reason of the violations found under Counts I, II, and IV of the complaint,

as amended, it is now ordered that the respondent be, and he hereby is, suspended from the practice of law in the State of Indiana for a period of not less than 180 days, beginning August 4, 1976; and that he pay the costs of these disciplinary proceedings.

It is further ordered that the respondent may, at any time after the 170th day of suspension, file with the Clerk of this Court his petition for reinstatement, together with the receipt of said Clerk for the payment of the aforesaid costs, and a copy of said petition and receipt with the Supreme Court disciplinary Commission, which Commission shall file objections thereto, if any, within ten (10) days thereafter. Absent such objections, said petition will be granted without further proceedings. Otherwise, such suspension shall continue pending the further order of this Court.

NOTE.—Reported at 350 N.E.2d 623.