IN THE MATTER OF JACK R. WOOD.

[No. 375S71. Filed December 23, 1976.]

*Palmer K. Ward,* of Indianapolis, for respondent.

*David B. Hughes,* of Indianapolis, for the Indiana Supreme Court Disciplinary Commission.

PER CURIAM—This is a disciplinary proceeding before this Court on the Hearing Officer's Findings of Fact and Conclusions. Additionally, the Court has before it a "Petition for Review" filed by the respondent, and a "Brief in Support of the Hearing Officer's Findings of Fact and Conclusions," filed by the Disciplinary Commission of the Supreme Court.

One question must be resolved before this Court can review this matter as required by Admission and Discipline Rule 23, § 15. The respondent has moved that this cause of action should be dismissed by reason of adverse and damaging publicity prior to the presentation of any evidence to the Hearing Officer. The respondent does not allege, however, and there is no evidence to suggest that such publicity is attributable to the deliberate acts of the Disciplinary Commission or persons involved in this proceeding. Furthermore, there is no showing as to how

such publicity prevented the fair disposition of the issues raised in this cause or denied the respondent his opportunity to meet and contest arguments and matters directed against him. Accordingly, we find his argument without merit and deny the respondent's motion to dismiss.

The respondent in this cause was charged under a two count complaint with violating Disciplinary Rules 1-102(A)(4), (5), and (6); 2-106(A) 5-101(A); 5-104(A); and 7-101 (A)(3) of the *Code of Professional Responsibility for Attorneys at Law* and the *Oath of Attorneys* for members of the Indiana State Bar. These charges emanate from the respondent's representation of two female clients and his alleged attempts to gain sexual favor through such representation.

Upon the filing of the complaint a hearing officer was appointed; this disciplinary proceeding was heard and argued before the Hearing Officer and, as above-noted, the findings and conclusions of the Hearing Officer are now before this Court. After carefully considering such findings and all matters which have been submitted in this cause and after examining the record of proceedings, this Court now finds that the respondent represented a female client and her husband during 1973 and 1974, which included representation in a foreclosure action against them as defendants. During the course of this representation the respondent offered to exchange his legal services for nude photographs of this female client and her daughter. Several photographs of this nature were taken by a male boarder living in the client's home and these were given to the respondent; the respondent also took nude photographs of this client in his law offices during the summer of 1974. Additionally, during February and March, 1974, the respondent had sexual relations with this client.

This Court also finds that, in October 1973, another female client and her husband consulted with the respondent concerning the adoption of their child in exchange for money. After explaining that an adoption could not be handled in

this manner, the respondent informed these parties that one of respondent's other clients would pay from twenty-five to one hundred fifty dollars for nude photographs of this second female client. Initially, this offer was declined. In November 1974, this same female client contacted the respondent concerning a divorce, at which time the respondent renewed his offer of payment for nude photographs and further offered to allow this client twenty-five dollars toward filing costs if she would allow the respondent to take such photographs. The client indicated that she would return at a later date with her decision.

The offer was then reported to the local police. This female client was wired with a recording device and she returned to the respondent's office. The respondent repeated his offer to apply twenty-five dollars toward his fee if this client would allow the taking of nude photographs. Five days later, after voluntarily being wired with the recording device, this female client again went to the respondent's office. During this visit she accepted the respondent's offer and allowed him to photograph her with the top half of her clothing off. The respondent then asked this client to remove her pants.

Additionally, this Court finds that the respondent made advances toward and attempted to have sexual relations with the above-mentioned second female client and that the respondent did represent an individual who owned a nudist camp and edited a magazine containing nude pictures.

In his petition for review, the respondent challenges portions of the Hearing Officer's findings of fact which form a basis for the above stated findings of this Court.

Respondent asserts that there is no evidence to sustain the finding that respondent took nude photographs of the above-mentioned first female client in his office during summer of 1974. At page 30 of the transcript the following testimony by this client appears:

"Q  Did Mr. Wood ever take any pictures of you?
A  Yes, sir.

Q Were these pictures taken pursuant to the agreement that you had with him and which, I believe, you said was in February of '74?

A Yes, sir.

Q What kind of pictures were these?

A They were pretty bad, sir.

Q When were they taken?

A In his office.

Q When?

A Well, it was hot weather.

Q What year?

A Of '74. I would say it would have to be sometime around May or June."

This individual further testified relative to these pictures as follows:

"Q It was sometime during the summer of '74, in May or June?

A Yes.

Q Where were they taken?

A In his office.

Q Who was present when these pictures were taken?

A Me and Mr. Wood.

Q How were they taken?

A With his camera.

Q Do you remember what kind of camera it was?

A It was a black camera. It was a Polaroid that you slipped back, instamatic.

Q What kind of pictures were they? Were they the same type of pictures that you looked at in Disciplinary Commission Exhibit No. 9?

A 9 is your last exhibit?

Q That last group of pictures.

A Yes, sir.

Q Same type of pictures?

A Yes, sir."

This client identified Exhibit 9, which consisted of nude photographs, as photographs of herself. Accordingly, the Court considers this assertion of error to be without merit.

Next, the respondent contends that there is no evidence to sustain the finding that the above mentioned second female was, in fact, a client of the respondent. This woman testified during direct examination that during the early part of 1974 she went to the respondent's office to discuss a divorce. The respondent agreed to handle the divorce during this discussion. (Tr. 104). This Court finds this evidence sufficient to support the finding that the above noted second female was in fact a client of the respondent.

In his petition for review the respondent draws question to the finding of fact that the respondent took photographs of the second female client with the top half of her clothing off. This individual testified on several occasions that she removed her brassiere, and the respondent "threw it in a chair." (Tr. 144) This Court finds absolutely no basis to the assertion made by respondent in this paragraph of his petition for review.

The respondent in this petition for review makes further assertions of error in the Hearing Officer's finding of fact, which do not relate to the facts as found by this Court; accordingly such matters are found not to constitute issues for review by this Court.

The respondent also argues that the testimony of the first female client was "impeached" in that she improperly testified that the boarder living with the family was a distant relative when this boarder testified that he was not related. We find any inconsistency on this insignificant point to be so minor, when viewed against the overwhelming preponderance of evidence establishing misconduct and supporting the testimony of this client, as not to constitute a sufficient basis for impeachment.

Lastly, the respondent asserts that the tape recording obtained by the police during the respondent's conversations

with the above noted second female client should not have been admitted into evidence, arguing that such recording was made without respondent's consent, that no warnings were given, and that such recording was not of sufficient clarity as to be readily understood. He cites no authority in support of this contention.

This Court has previously held that the admission of a sound recording should be preceded by a foundation disclosing the following:

(1) That it is authentic and correct;

(2) That the testimony elicited was freely and voluntarily made, without any kind of duress;

(3) That all required warnings were given and all necessary acknowledgments and waivers were knowingly and intelligently given;

(4) That it does not contain matter otherwise not admissible into evidence; and

(5) That it is of such clarity as to be intelligible and enlightening to the jury. *Lamar* v. *State*, (1972) 258 Ind. 515, 282 N.E.2d 795.

While the *Lamar* case was a criminal proceeding trial before the jury and, as such, readily distinguishable from the present case, the requirements for admissibility stated in *Lamar* have general application under the disciplinary rules.

Viewing the respondent's assertion of error relative to the introduction of the tape recording in the context of the criteria established in the *Lamar* case, the issue becomes whether items two, three, and five, as modified to reflect the fact that this cause was tried without a jury, have been met in the present case.

We find no evidence of duress; the recorded statements were freely and voluntarily made by the respondent. This portion of the test for the admissibility of a tape recording in disciplinary proceedings does not require that all persons who were recorded must give their consent to such recording. *State ex rel. Oklahoma Bar Association* v. *James*, (1969) 463 P.2d 972. The question of

voluntariness is directed to the statements made, not the recording of these statements. The general rule concerning admissibility of evidence secured by a mechanical device permits the introduction of such evidence where it appears that one of the parties to the overheard conversation consented to or cooperated in its interception. 97 ALR 2d 1302. In the present case, the respondent's client agreed to the recording; respondent voluntarily discussed the recorded conversation with this individual; accordingly, we now conclude that the recorded testimony was freely given without duress and thusly meets the second item of the above stated test.

As to the issue of applicable warnings and the intelligent waiver of rights, we find no basis for objection on the part of respondent. The attorney-client privilege belongs to the client and this privilege of the communication between attorney and client may be waived by the client. *Key* v. *State*, (1955) 235 Ind. 172, 132 N.E.2d 143; *Fluty* v. *State*, (1947) 224 Ind. 652, 71 N.E.2d 565; *Oliver* v. *Pate*, (1873) 43 Ind. 132. Under the facts of the present case, the client unequivocally waived her right to a privileged communication; the respondent has no standing to complain. Additionally, the facts of this case demonstrate that Miranda warnings were not required.

Lastly, with regard to the taped conversation, respondent contends that such tape was not of sufficient clarity to be understood and accordingly should have been excluded from the evidence. We again note that the *Lamar* case, *supra.,* involved a jury. One key consideration in the prior opinion was our conclusion that an inaudible tape in a criminal proceeding could allow the jury to improperly speculate as to the evidence. There is no jury in a disciplinary proceeding; evidentiary matters are initially considered by an attorney, as the hearing officer, and then reviewed by this Court. This distinction is crucial in that lay persons are not involved in the fact-finding process and only persons trained in the law will weigh evidentiary matters.

We have listened to the tape and find that many portions of this tape are, in fact, inaudible; we attach no significance to these excluded portions and have not considered such matters in our findings of fact. Likewise, we note that a transcript of the tape was prepared and admitted as an exhibit before the Hearing Officer. Such transcript was prepared with the assistance of another transcript. We have found the tape so inaudible as to draw serious question to the validity of the transcript. Accordingly, we have not considered the transcription in reaching our findings of fact. Furthermore, we have attached extremely limited significance to the tape, i.e., merely corroboration of the fact that certain conversations took place between the second female client and defendant and that such conversations involved the taking of photographs in exchange for money.

In light of our findings of fact in this matter we now conclude that under Counts I and II of the complaint, the respondent violated Disciplinary Rules 1-102(A)(6) and 5-101 (A) of the *Code of Professional Responsibility for Attorneys at Law.*

This Court has not previously addressed misconduct as found in this proceeding. It should be readily understood at the outset, that this Court does not, cannot, and will not, attempt to establish guidelines for the sexual activities of the members of the bench and bar. Yet, this Court, under the Constitution of the State of Indiana, is given the responsibility of the preservation of the integrity of the judicial system and its officers, and when the sexual activities of an attorney involve conduct which demonstrates an unfitness to practice law, this Court has no alternative but to meet its responsibility and impose discipline, if appropriate.

The sexual activities of the respondent in this cause were not personal and unrelated to his practice of law. He attempted to exchange legal services for sexual favors. The females involved in this conduct were clients who first ap-

proached the respondent in a professional capacity. One client expressed a reluctance to pose or provide photographs. Yet, the respondent persisted in his overtures on more than one occasion after his initial suggestion was turned down. The respondent used his office to photograph these individuals. It is this improper combining of professional and personal interests which establishes his unfitness to practice law and constitutes a violation of Disciplinary Rule 1-102(A)(6).

Additionally, respondent sought to serve three masters, his client, himself, and another client who was allegedly interested in obtaining nude photographs. In his efforts to accomplish this objective, the respondent applied economic pressure on his clients to perform embarrassing and improper acts. This conduct clearly violates Disciplinary Rule 5-101(A) which provides that a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own personal interests. We do not find the requisite disclosure by an attorney and waiver of the ethical conflict by the client which would permit such conflict to exist.

It is now our duty to determine the appropriate discipline to be imposed for the misconduct we have found in this matter, taking under consideration the nature of the violation, the specific acts of the respondent, this Court's responsibility to preserve the integrity of the Bar of this State, the risk, if any, to which we will subject the public by permitting the respondent to continue in the profession or to be reinstated at some future date, and the deterrent effect the imposition of discipline has on the Bar in general. *In re Noel*, (1976) 265 Ind. 98, 350 N.E.2d 623; *In re Lee*, (1974) 262 Ind. 439, 317 N.E.2d 444.

From an examination of the matters submitted in this cause, it does appear that the above discussed female clients freely consented to the acts of the respondent. Furthermore, we are not unmindful of the detrimental effect the publication of this opinion will bring to the respondent's legal prac-

tice. In the long run it will be this public response to the respondent's acts which will have the greatest impact. On the other hand, however, it is also apparent that the respondent sought to gain sexual favor at a time his clients were involved in marital and economic difficulties. His clients came to the respondent for assistance and professional representation. The respondent used this opportunity to pursue personal objectives.

With the foregoing considerations in mind, we conclude that in order to preserve the integrity of the legal profession and provide a sufficient deterrent to the bar in general, a substantial period of suspension is warranted in this cause. Accordingly, by reasons of the violations found under Counts I and II of the complaint, it is now ordered that the respondent be, and he hereby is, suspended from the practice of law in the State of Indiana for a period of not less than one year, beginning February 1, 1977, and that he pay the costs of these disciplinary procedures.

NOTE.—Reported at 358 N.E.2d 128.