Givan, C.J., Hunter, Prentice and Pivarnik, JJ., concur.

NOTE—Reported at 385 N.E.2d 1127.

IN THE MATTER OF LEWIS T. WIREMAN

[No. 575S122. Filed October 14, 1977.]

*Robert J. Mucker*, of Lafayette, for respondent.

*David B. Hughes*, for Indiana Supreme Court Disciplinary Commission of Indianapolis.

PER CURIAM — This is a disciplinary proceeding before this Court on an amended seven-count complaint filed by the Disciplinary Commission pursuant to Admission and Discipline Rule 23, Section 12. A Hearing Officer was appointed; this cause has been heard; and the Hearing Officer has filed his Findings of Fact, Conclusions of Law and Recommendations. Respondent now petitions this Court for review of the findings of the Hearing Officer. Both parties have filed briefs in this cause.

The respondent has submitted numerous challenges to the procedure involved in the trial of this matter and the rulings of the Hearing Officer. These issues will be addressed in their order of presentation set forth in the briefs of the parties.

As his first assertion of error, respondent argues that he was denied due process of law by the Commission's alleged failure to follow Admission and Discipline Rule 23, Section 10(a)(2). The respondent contends that this rule, which affords the opportunity to respond to a grievance, was not followed relative to violations of the Code of Professional Responsibility in that the initial complaint filed in this cause asserted violations of Judicial Canons and did not specifically assert violations of the Code of Professional Responsibility. Thus, respondent concludes

that he was denied due process as to the charges of the complaint predicated on violations of the Code of Professional Responsibility.

This Court has recently held that a disciplinary grievance will not be strictly construed. *In re Murray*, (1977) 266 Ind. 221, 362 N.E.2d 128. In the *Murray* case, this Court set forth the relationship of the grievance to the complaint as filed by the Disciplinary Commission.

"The complaint filed by the Disciplinary Commission in all disciplinary cases is predicated on the grievance filed, but it would be absurd to hold that the grievance must be strictly construed, and the complaint must be narrowly limited to charges specified in the grievance. The vast majority of grievances are filed by persons not skilled in the law; the function of the Disciplinary Commission is to review the grievances, dismiss those which are baseless, and then frame a complaint so as to place the alleged misconduct within the structure of the Code of Professional Responsibility."

(362 N.E.2d at 130)

This language, above quoted, has equal application to the present cause. The respondent was advised of the general nature of the charges against him. Accordingly, we find that the purpose of Admission and Discipline Rule 23, Section 10(a)(2) has been met and there has not been a denial of due process.

The respondent next asserts a violation of the 14th Amendment of the United States Constitution by reason of the alleged failure of the Executive Secretary of the Disciplinary Commission to follow the provisions of Admission and Discipline Rule 23, Section 10(b), which provides as follows:

"Thereafter, within forty-five (45) days, after notice to the Respondent, if, the executive secretary, upon consideration of the grievance, the preliminary investigation and any response from the respondent, determines there is a reasonable cause to believe that the respondent is guilty of misconduct the grievance shall be docketed and investigated. If he determines that no such reasonable cause exists, the grievance shall be dismissed with the approval of the commission. In either event, the person filing the grievance (hereinafter referred to as 'the complainant') and the respondent shall be given written notice of the executive secretary's determination."

The records in this case demonstrate that within forty-five days of the filing of the grievance, the Executive Secretary gave the following notice to the respondent:

"Reference the Request for Investigation grievance filed against you with this Commission by J. Michael Piggott on November 18, 1974, Section 10 of A.D. Rule 23 requires the grievance be docketed within forty-five (45) days of your receipt of the above complaint, and since the investigation has not been completed, this grievance has been assigned Docket Number D-111874B.

"Upon completion of the investigation, you will be notified of the disposition of said cause."

The respondent argues that since there was no apparent finding of "reasonable cause", he was denied due process.

While the letter of notification was not the most artfully worded document and did not specifically dovetail with the provisions of Section 10(b), there is no doubt that the cause was docketed within the forty-five day requirement. The docketing of this matter infers a finding of reasonable cause. Thus, we find no merit in this assertion of error.

As his third assertion of error, the respondent argues that he was further denied due process when a hearing was not conducted within sixty days after a determination of reasonable cause. Respondent asserts that Admission and Discipline Rule 23, Section 13(a), which authorizes the appointed Hearing Officer to conduct a hearing within sixty days, is a jurisdictional requirement; it is respondent's position that the Hearing Officer should have granted his motion to dismiss after the sixty-day period had expired without a hearing.

Due process, as applied to disciplinary proceedings involving attorneys, requires notice of the charges and an opportunity to be heard. *In re Ruffalo*, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed. 117, reh. den. 391 U.S. 961, 88 S.Ct. 1833, 20 L.Ed. 874; *In re Stivers*, (1973) 260 Ind. 120, 292 N.E.2d 804; *In re Murray, supra*. Beyond these requirements, there is no authority to suggest that the expiration of a time period would establish a constitutional infirmity mandating dismissal of all charges. There may be hypothetical factual situations where this expiration of time destroys the fundamental fairness of the

entire disciplinary process; however, there is no evidence in the present case to warrant such determination. Accordingly, this Court now overrules Respondent's Motion to Dismiss and assertions of error predicated on the Hearing Officer's denial of dismissal.

The next series of issues raised by respondent center on the denial of pre-trial discovery. *In re Murray, supra,* disposes of these issues. The requirements of due process do not require pre-trial discovery. Accordingly, we find no merit in respondent's assertions of error arising from the overruling of respondent's "Motion for Production, Inspection and Copying Documents and Things", the refusal of police officers to answer certain questions during pre-trial depositions, and the refusal of WASK News department reporters to answer questions during pre-trial depositions.

As a fifth general assertion of error, the respondent asserts that it was improper for the Hearing Officer to exclude testimony of news reporters by reason of the Indiana Shield Law (I.C. 34-3-5-1).

This assertion of error stems from an attempt by respondent to elicit testimony from news reporters called as witnesses by the respondent. Examination of the transcript indicates that objection was made to such testimony as being immaterial and confidential under the shield law. The majority of objections were made when reporters were asked if certain matters were discussed with particular individuals. This type of conversation is protected by the shield law.

The transcript further demonstrates that on several occasions WASK News reporters were questioned as to why their course of investigation changed from a news story to a disciplinary matter. We find these questions to be irrelevant to the issue before the Hearing Officer and this Court, to-wit: The substantiation of alleged violations of the Code of Professional Responsibility and the Code of Judicial Conduct and Ethics, as then in effect. Accordingly, we now find that the testimony from which this assertion of error emanates was properly excluded.

Respondent further asserts that he was denied his right to confront his accuser in that the party who filed the initial grievance, J. Michael

Piggott, declined to testify under the Indiana Shield Law. Respondent confuses this proceeding with a criminal prosecution. The party signing a grievance is not parallel to the victim who signs a charging affidavit. Within the disciplinary process, the Disciplinary Commission is given the responsibility of making an independent judgment as to the likelihood of misconduct. It is the Disciplinary Commission and not the grievant who files the complaint.

The respondent also asserts that he was improperly denied an opportunity to demonstrate a waiver of the shield law by news reporters. This argument is misdirected. The record demonstrates that respondent sought to develop, through his interrogation of the news media witnesses, that a conspiracy, adverse to the respondent, existed among such individuals. These individuals were called by the respondent and did not testify against him; additionally, respondent does not argue that witnesses presenting evidence against him were involved in such conspiracy. Thus, as the case developed at the hearing level, respondent called witnesses, who had not testified, attempted to develop a conspiracy theory unrelated to adverse witnesses, and was prevented from doing so by the use of the shield law and the rulings of the Hearing Officer. We view the excluded testimony as irrelevant; likewise, whether or not there was a waiver of the shield law is irrelevant.

Several remaining issues may be grouped within the consideration of whether, as a matter of law, the failure of the respondent, a Judge in a City Court, to disqualify himself constitutes a basis for disciplinary action. The respondent argues that, in the cases giving rise to the present proceeding, there was no showing that disqualification was required. Thus, whether he disqualified himself or not was a discretionary matter and accordingly not a proper basis for a disciplinary proceeding. Alternatively, respondent points out that if he did not properly disqualify himself, the remedy came by reason of a voidable judgment and not through a disciplinary proceeding.

The respondent has confused the function of a disciplinary proceeding and an appeal. Under the Constitution of this state, this Court must establish and maintain standards of conduct for attorneys and judges, most standards being based upon the propriety of the professional conduct involved. These standards exist indepen-

dent of the results of litigation out of which may develop an allegation of impropriety. The fact that a judgment may or may not be voidable is not determinative of whether the acts of an attorney or judge constitute misconduct. The standard is the code and it is the particular conduct, not the outcome of the litigation, which determines whether or not there is a violation. At a later point in this opinion, the specific acts of the respondent will be set forth and measured against the applicable code provisions. Accordingly, this Court now finds these assertions of error to be without merit.

Next, respondent argues that he was improperly prohibited from introducing a taped conversation into the proceeding. This conversation allegedly took place between a police officer and one of the witnesses against the respondent. The police officer maintained possession of the tape and at a later point turned it over to the attorney for respondent. The respondent attempted to introduce this tape by playing it to the Disciplinary Commission's witness for identification.

This Court has previously held that the requirements set forth in *Lamar v. State*, (1972) 258 Ind. 504, 282 N.E.2d 795, concerning the necessary foundation for the introduction of a taped recording, have general application in disciplinary proceedings. *In re Wood*, (1976) 265 Ind. 616, 358 N.E.2d 128. The first of these requirements is that a foundation must be laid demonstrating that the tape is authentic and correct. We find that the playing of the tape to a witness in open court is not a proper way to meet this requirement. Thus, we conclude that the tape was correctly excluded from the record.

The respondent also asserts that he was improperly precluded from showing that a political conspiracy existed to defeat him and bring discredit to his party. The record demonstrates, however, that this alleged conspiracy did not involve any witness to the proceeding. The respondent was allowed to demonstrate bias and prejudice of the witnesses who testified; he was only precluded from developing evidence of prejudice of those who had not adversely testified against him. This Court finds that this evidence was immaterial and properly excluded.

At the beginning of the proceedings before the Hearing Officer, the respondent requested and was granted a closed hearing. The record

indicates that on several occasions the Hearing Officer admonished witnesses, in the presence of counsel, not to disclose their testimony to anyone outside of the hearing room. It appears readily clear to this Court that the Hearing Officer meant exactly that; the testimony was not to be disclosed to anyone, including other witnesses.

Later in the hearing, it was discovered that taped or transcribed portions of the hearing were being provided by the respondent to witnesses. After learning of such practice, the Hearing Officer suppressed the testimony of respondent's witnesses who had been furnished this prior testimony. Respondent now asserts that this suppression of testimony was improper.

The core of respondent's argument is that although this was a closed hearing, there was no formal separation of witnesses. Thus, respondent concludes that it was proper to provide the prior testimony to witnesses.

We find that respondent's argument elevates form over substance. The record does not indicate that a formal separation of witnesses was entered; however, the record is clear that the Hearing Officer, throughout the proceeding, considered this a private hearing which incorporated the protection of an order for separation. This view should have been readily apparent to counsel. Once a violation of the separation of witnesses is disclosed, a trial court has discretion as to whether or not to allow the witness to testify. *Myslinski v. State*, (1971) 257 Ind. 453, 275 N.E.2d 544; *McCoy v. State*, (1960) 241 Ind. 104, 170 N.E.2d 43. This Court now adopts the ruling of the Hearing Officer suppressing this testimony.

Respondent next asserts that the testimony of David Banton, who was called as a witness by the Disciplinary Commission, should be suppressed in that this witness was not available for cross-examination. During the trial the Disciplinary Commission attempted to show, through the introduction of a hearsay document, that the respondent procured the absence of this witness. We find the Disciplinary Commission evidence insufficient to establish this point. Accordingly, in the interest of fairness, we have excluded the testimony of David Banton and the Disciplinary Commission's exhibits purporting to connect the respondent to Mr. Banton's unavailability from any consideration of misconduct.

The remaining assertions of error concern the introduction of evidence, evidentiary rulings, the substantiation of alleged facts and conclusions to be drawn from the factual findings. Assertions of error along these lines need not be individually addressed. As this Court stated in the *Murray* case, *supra*, ultimate findings of fact upon which a determination of misconduct is weighed are reached through a complete examination of all matters, including the transcript. In the present case, the process of review has included examination of the record and all matters submitted by the parties. The following portion of this opinion sets forth the factual findings and conclusions this Court has reached.

Under Count I of the complaint, the respondent is charged with violation of Disciplinary Rules 1-102(A)(5) and (6), 7-105, 9-101(A) and (C) of the *Code of Professional Responsibility* and Canon I of the *Code of Judicial Conduct*, as then in effect.

After examining all matters which have been submitted in this cause, this Court now finds in August, 1972, the respondent, as attorney for Jacquelyn S. Mathes, commenced a cause of action for divorce against Larry Mathes in the Tippecanoe Superior Court #2. This suit was concluded by a decree of divorce under which Mr. Mathes was to pay a sum of $35 per week for the support of the three minor children. Mr. Mathes, at that time, paid the respondent attorney's fees for the representations of Mrs. Mathes. In early 1974, the respondent commenced representation of Mrs. Mathes for the collection of delinquent child support. Along these lines, the respondent had several personal conferences with Mr. and Mrs. Mathes, eventually culminating in agreement on the amount of support arrearage.

In May, 1974, Mr. Mathes was found by the Tippecanoe Superior Court to be delinquent in his child support obligations in the sum of $175. Additionally, the Court ordered Mr. Mathes to pay the respondent reasonable attorney's fees in the sum of $75 for his representation of Mrs. Mathes in the contempt proceedings; $35 of this fee was paid to the respondent.

In August, 1974, Mrs. Mathes, whose name was then Jacquelyn Sue Wright, executed an affidavit charging her former husband with the offense of having failed to provide support for the parties' minor children; this cause was then filed in the Lafayette City Court, where the respon-

dent was the duly elected and qualified judge. Thereafter, the respondent entered an order directing Larry Mathes to be served the summons returnable on August 26, 1974. On August 22, 1974, Mrs. Mathes signed an application for contempt, which was filed in the Tippecanoe Superior Court on August 26. Respondent signed this application as attorney for the petitioner. On August 26, 1974, Larry Mathes appeared before the respondent in the Lafayette City Court; he was not represented by counsel. No witnesses appeared on behalf of the State, respondent did not offer to disqualify himself, and respondent did not advise Mr. Mathes that he had a right to ask for a change of judge. Respondent thereafter accepted a plea of guilty and withheld judgment for a period of two years on condition that Larry Mathes pay $45 weekly support for the benefit of the three minor children. Respondent further advised Mr. Mathes that if the $45 per week was not paid, the defendant would be subjecting himself to a fine of up to $500 and incarceration of up to six months. On September 9, 1974, the Superior Court found Mr. Mathes to be $60 in arrears, and again ordered that the respondent be paid $75 attorney's fees.

This Court finds that the conduct of respondent in this matter was prejudicial to the administration of justice, adversely reflected upon respondent's fitness to practice law, involved a threatened use of criminal proceedings to enforce civil obligations, involved private employment in areas where the judge had acted in a judicial capacity, and inferred that the respondent could improperly influence a judicial decision. Accordingly, this Court finds that the conduct of the respondent violated the provisions of the Code of Professional Responsibility set forth in Count I of the complaint. Also, the conduct of respondent in this matter was improprietous and accordingly violated Canon I in the Code of Judicial Conduct, as then in effect.

Under Count II of the Amended Complaint, the respondent is charged with violating Disciplinary Rules 1-102(A)(5) and (6) of the Code of Professional Responsibility and Canon I of the Code of Judicial Conduct, as then in effect.

After examination of all matters which have been submitted in this cause, this Court now finds that in August, 1972, the respondent, as attorney for Vivian E. Hunter, commenced an action for support against

Mrs. Hunter's husband, Kenneth Hunter, in the Tippecanoe Superior Court #2. This action was subsequently dismissed with Mr. Hunter paying $300 attorney's fees; however, in May, 1973, the respondent filed a similar action for Mrs. Hunter, again in the Tippecanoe Superior Court. This proceeding concluded by a decree of divorce under which Kenneth Hunter was to pay $30 per week child support and an additional $300 attorney's fees. In May, 1974, Mrs. Hunter, with respondent appearing as counsel, filed an application for contempt citation against Mr. Hunter in the Tippecanoe Superior Court. This matter was concluded without hearing. In August, 1974, Mrs. Hunter executed an affidavit charging her former husband with the offense of failing to provide support, and this cause was filed in the Lafayette City Court where the respondent was the duly elected judge. On September 5, 1974, Mr. Hunter appeared before respondent and entered a plea of guilty. The respondent withheld judgment for a period of two years on condition that Mr. Hunter pay $30 per week for the minor children. Respondent advised Mr. Hunter that if he did not pay the support obligation, he, Mr. Hunter, would be going to jail.

This Court now finds that the acts of respondent were prejudicial to the administration of justice, adversely reflected on respondent's fitness to practice law, and were highly improprietous for a judicial officer. Accordingly, the Court further finds that the respondent's conduct violated the provisions set forth under Count II of the Amended Complaint.

In Count IV of the Amended Complaint, respondent was charged with violating Disciplinary Rule 1-102(A)(5) and (6) and 9-101(C) of the Code of Professional Responsibility and Canon I of the Code of Judicial Conduct, as then in effect.

This Court finds that the respondent represented David S. Banton in criminal and civil matters. In 1973, four proceedings were commenced against David S. Banton in the Lafayette City Court. The respondent did not disqualify himself as judge of the Lafayette City Court in any of the cases. On June 16, 1974, David S. Banton was arrested by Lafayette police on charges of driving under the influence of alcohol, fleeing a police officer, and running a stop sign. At that time, normal police procedure required a person arrested for driving under the influence would re-

main in police custody for several hours. Mr. Banton made two phone calls when he arrived in the Police Station. Within five minutes respondent called Lafayette Police and directed that David Banton be released without bond on his own recognizance.

This Court now finds that the conduct of the respondent in this matter was prejudicial to the administration of justice, adversely reflected on respondent's fitness to practice law, suggested that the respondent could influence, improperly, judicial decisions and involved improprietous acts for a judicial officer. Accordingly, this Court further finds that the conduct of the respondent constitutes a violation of the provisions cited in Count IV of the Amended Complaint.

Under Count V of the Amended Complaint, the respondent is charged with violating Disciplinary Rules 1-102(A)(5) and (6), 9-101(C) of the Code of Professional Responsibility, and Canon I of the Code of Judicial Conduct. This Court now finds that the respondent, as an attorney, represented Richard Dean Smith. In 1974, the respondent sat in Lafayette City Court on various cases involving Mr. Smith. The respondent did not disqualify himself in any of these matters.

The Court further finds that prior to these cases being filed, respondent had encouraged Richard Dean Smith and others to perpetrate first-degree burglary. This conduct indicates acts prejudicial to the administration of justice, adversely reflects on respondent's fitness to practice law, implies the improper ability to influence judicial decisions, and was highly improprietous for a judicial officer.

This Court now finds that the respondent violated the Code of Professional Responsibility and the Code of Judicial Conduct as charged under Count V of the Amended Complaint.

Under Count VI of the Amended Complaint, the respondent is charged with violating Disciplinary Rules 1-102(A)(3), (4) and (6). This Court now finds that on February 9, 1974, Richard Dean Smith and Paul Banton burglarized the residence of William R. Osborn, removing, among other things, numerous hand guns and rifles. Prior to this burglary, the respondent had informed Smith and Banton of the existence of an expensive gun collection in the home of Mr. Osborn. After the burglary, the respondent purchased and received at least one hand gun and three rifles which

had been stolen from the Osborn residence, knowing them to have been so stolen.

This Court now finds that the acts of respondent involved illegal conduct, constituted conduct involving dishonesty, and adversely reflected on respondent's fitness to practice law. Accordingly, the Court further finds that the respondent violated the Code of Professional Responsibility as charged under Count VI of the Amended Complaint.

Under Count VII of the Amended Complaint, the respondent is charged with violating Disciplinary Rules 1-102(A)(3), (4) and (6).

After examining the matters which have been submitted in this cause, the Court now finds that on or about March 15, 1974, Richard Dean Smith and Paul Banton burglarized the home of Maurice E. Callahan, removing, among other things, miscellaneous coins. Prior to this burglary, the respondent had advised Mr. Smith and Mr. Banton that he was interested in obtaining these coins by illegal means.

This conduct involved illegal acts, involved dishonesty, and adversely reflects on the respondent's fitness to practice law. Accordingly, this Court now finds that the respondent has violated the Code of Professional Responsibility as charged under Count VII of the Amended Complaint.

It now becomes the duty of this Court to determine the appropriate discipline in this case. This Court has stated in previous cases that such decisions are reached by taking into consideration the nature of the violations, the specific acts of the respondent, this Court's responsibility to preserve the integrity of the bar, the risks, if any, to which we will subject the public by permitting the respondent to continue in the profession or be reinstated at some future date, and the deterrent effect that the imposition of discipline has on the bar in general. *In re Murray, supra; In re Wood, supra; In re Noel,* (1976) 265 Ind. 98, 350 N.E.2d 623. It is obvious, from an examination of the findings of this Court, that respondent does not begin to measure up to acceptable standards of professional conduct. He has engaged in illegal, dishonest, and reprehensible activity. He has blurred the function of an attorney into his acts as a judicial officer. The respondent is a grave discredit to the legal profession.

With these considerations in mind, we now conclude that in order to preserve the integrity of the legal profession, in order to protect the public from future conduct demonstrated in this case, and in order to show this Court's total abhorrence in the conduct of the respondent, the maximum disciplinary sanction authorized by the Constitution of the State of Indiana must be imposed in this case. Accordingly, by reason of the misconduct found under the above specified counts of the Amended Complaint, it is now ordered that the respondent be, and he hereby is, disbarred as an attorney in the State of Indiana.

Costs of these proceedings are assessed against the respondent.

NOTE—Reported at 367 N.E.2d 1368.