IN THE MATTER OF JOHN NEWTON MERRITT.

[No. 1074S210. Filed June 10, 1977.]

*Richard L. Tandy,* of Greenwood, for respondent.

*David B. Hughes,* of Indianapolis, for Supreme Court Disciplinary Commission.

PER CURIAM—This is a disciplinary proceeding before this Court on an eight count amended complaint filed by the Indiana Supreme Court Disciplinary Commission against the respondent in this cause. A hearing on this complaint has been conducted by a Hearing Officer appointed by this Court and the Hearing Officer has filed his findings of fact, conclusions of law, and recommendations in this cause. Neither the re-

spondent nor the Disciplinary Commission have petitioned for review.

This Court, after considering all matters which have been submitted in this cause, now adopts and accepts as its own, the findings of fact and conclusions of law submitted by the Hearing Officer, which are as follows:

## FINDINGS OF FACT
### GENERAL

1. The respondent, John Newton Merritt, was admitted to the Bar of the State of Indiana on September 22, 1971.

2. The respondent is currently living in Daphne, Alabama. Between September of 1971 and February of 1975, the respondent practiced law as a sole practitioner in Noblesville, Hamilton County, Indiana.

3. Respondent closed his law office December of 1974 and prior thereto his secretary, Vicki Shannon, left his employment but agreed to continue stopping by the Clerk's office in the Hamilton County Court House to pick up court notices for respondent. Neither Vicki Shannon or respondent had ever went (sic) to such Clerk's Office following the termination of her employment to pick up any Court notices with regard to respondent's cases.

4. The respondent states that he believed that the Hamilton County Bar Association would take care of his pending cases which said belief was based upon a conversation had with Michael Howard, an attorney of Hamilton County, held in the Offices of the Disciplinary Commission of this Court on March 7, 1975. The respondent did not contact the Hamilton County Bar Association to determine whether in fact such Association was taking care of the disposition of his cases.

## COUNT I

1. The respondent was retained in April of 1973 to act as attorney for James W. Black for the purpose of defending Black on charges of Sodomy and Contributing to the Delinquency of a Minor which were then pending in the Hamilton County Superior Court and respondent entered his appearance on behalf of such defendant on April 27, 1973.

2. Black did not have sufficient funds to pay attorney fees or to post bond. Black's only major asset was a substantial equity in real estate located at 5252 East 82nd Street, Indianapolis, Indiana, and Black desired to sell his real estate so that he could post bond and pay attorney fees.

3. On May 21, 1973, the Judge of the Hamilton Superior Court ordered that the defendant, Black, be transferred to the Indiana State Reformatory for safekeeping by making the following order:

"The Court, being duly advised, now orders the Sheriff of Hamilton County, Indiana, to transfer the defendant, James Black, to the custody of the Superintendent of the Indiana State Reformatory, Pendleton, Indiana, for the welfare of the defendant and for his personal safekeeping, and this order shall be sufficient authority for said Superintendent to retain the custody of said defendant all until further order of this Court. So ordered this 21st day of May, 1973." Prior to Black's transfer to the Indiana State Reformatory for safekeeping, the respondent obtained from Black a promissory note in the amount of Two Thousand Dollars ($2,000.00) secured by a mortgage on Black's real estate as security for the payment of attorney fees. On April 27, 1973, the respondent filed a motion on behalf of defendant suggesting that such defendant was insane.

4. The respondent discussed the sale of Black's real estate with two different real estate agents representing competing real estate agencies.

5. On July 12, 1973 in an effort to obtain the signature of Black on a listing agreement for such real estate, the respondent took a real estate agent, Bruce Schwartz, to the Indiana State Reformatory at Pendleton, Indiana, where Black was then held for safekeeping.

6. In July of 1973, the Indiana State Reformatory policy required the approval of the Committing Court before an inmate held for safekeeping would be allowed to visit with persons other than the inmate's attorney of record.

7. On July 12, 1973, the respondent did not have Court permission for Bruce Schwartz to visit Black and the respondent advised the Prison Official in charge of approving visitation on said date that respondent was Black's attorney of record and that Schwartz was from respondent's law office or had come with respondent from his office on business. Respondent did not tell such prison official that Schwartz was not an attorney. Said Prison Official believed from respondent's statements that both the respondent and Schwartz were attorneys for Black and thereafter approved visitation for Black with respondent and Schwartz. Re-

spondent was aware on such date that the Indiana State Reformatory would not allow Schwartz to visit with Black as such was against it's (sic) policy and respondent's representation with regard to Schwartz's capacity was therefore made for the purpose of obtaining visitation by Schwartz with Black.

8. On July 16, 1973, the respondent returned to the Indiana State Reformatory with Bruce Schwartz for a second visit with Black at which time respondent made a similar misrepresentation to Prison Officials with regard to Schwartz's capacity.

9. Respondent knew that in order to obtain a fee for his services on behalf of Black that it would be necessary for Black's real estate to be sold. The respondent therefore had a personal interest in having Black list and sell his real estate with a realtor and respondent's representation with regard to Schwartz were not made solely to benefit his client.

10. As a result of respondent's representations with regard to Schwartz, the said Bruce Schwartz was able to visit Black within the confines of the Indiana State Reformatory without Court approval and such visits resulted in Black giving Schwartz a listing contract for Black's real estate. The listing contract given Schwartz was later determined to be ineffectual because Black had earlier given another listing agreement to another real estate agency which found a buyer for Black's real estate.

11. The order of the Hamilton Superior Court with regard to the safekeeping of the defendant, Black, as entered on May 21, 1973 did not specifically or expressly limit the visitation of the defendant, Black, except as such visitation was effected by the visitation policy of the Indiana State Reformatory.

12. Respondent's conduct as set forth above in gaining the admission of Bruce Schwartz into the Indiana State Reformatory to visit with James Black was a course of conduct involving dishonesty, fraud, deceit and misrepresentation.

## COUNT II

1. In June of 1973, Phyllis Bucci was the estranged second childless wife of James W. Black, the defendant in the criminal action pending in the Hamilton Superior Court as set forth in the findings with regard to Count I.

2. On or about June 27, 1973, Mrs. Bucci was contacted by a real estate agent employed by the Gallery of Homes

Agency and was requested to accompany such realtor to the office of respondent which she consented to do.

3. While at respondent's office on said date the respondent asked Mrs. Bucci to sign a quitclaim deed conveying all of her interest in the real estate located at 5252 East 82nd Street. The respondent did not know at the time who the record owners of said Black real estate were other than his client James W. Black.

4. Mrs. Bucci told respondent that she would convey her interest in said real estate only if she would receive a portion of the proceeds from the eventual sale of the real estate.

5. The respondent in writing agreed to pay Mrs. Bucci one-third of the net proceeds of the sale of such property subject to all liens and encumbrances thereon and thereafter she signed the quitclaim deed prepared by and tendered to her by the respondent. The quitclaim deed, unbeknownst to Mrs. Bucci, conveyed her interest in the real estate to respondent.

6. Thereafter the respondent conveyed his interest in such real estate to his client James W. Black and the real estate was sold. To date Mrs. Bucci has received no money from respondent or anyone else in payment or part payment for said conveyance.

7. In July of 1973 the respondent told his client James W. Black that Black's wife had executed a conveyance of her interest in the real estate and that she would get nothing from the sale of the real estate.

8. On the date that she signed such quitclaim deed, the said Phyllis Bucci did not own any legal interest in such real estate as the real estate was owned and titled solely in the name of her husband, James W. Black.

9. Respondent's conduct in obtaining the quitclaim deed from Phyllis Bucci and assuring her in writing that she would receive one-third of the net proceeds from the sale of such real estate constituted a course of conduct involving dishonesty, fraud, deceit and misrepresentation.

## COUNT III

1. On June 20, 1974 a default judgment was entered against Jeffrey Martin in a paternity action entitled Sherry Paskins, b/n/f vs. Jeffrey Martin, Cause No. J5-359 in the Hamilton Circuit Court.

2. On August 15, 1974, the respondent entered his appearance in the above mentioned cause and filed a Motion to Correct Errors on behalf of the defendant Jeffrey Martin.

3. At such time there was pending against such defendant a Verified Motion for Rule to Show Cause which was set for hearing on August 16, 1974 at 2:00 p.m. which said hearing was continued on the defendant's motion due to the filing of the Motion to Correct Errors.

4. On November 18, 1974, a hearing was set on defendant's Motion to Correct Errors in such case to be held on December 3, 1974 and notice of such hearing was sent to counsel for all parties in compliance with Trial Rule 72 D.

5. At some time prior to the hearing date of December 3, 1974 Jeffrey Martin drove the respondent to the airport in Indianapolis. Mr. Martin informed the respondent that he was willing to accept the responsibility for the establishment of paternity and the respondent informed Mr. Martin that there was nothing more he could do for him and that he was leaving the State.

6. The respondent made no effort to inform the Court of his departure from the State nor did he make any attempt to direct Mr. Martin to other counsel nor did respondent withdraw his appearance which he had entered on behalf of Mr. Martin.

7. On December 3, 1974 neither the respondent nor Jeffrey Martin appeared at the scheduled hearing and as a result thereof the Motion to Correct Errors was summarily overruled and a judgment was entered on behalf of the plaintiff in the amount of Five Thousand Twenty-seven Dollars and Ten Cents ($5,027.10) for his non-payment of support, hospital and medical expenses and attorney fees. A bench warrant was issued for the arrest of the defendant Jeffrey Martin and the defendant was ordered held in the custody of the Sheriff of Hamilton County until he purged himself of contempt as found on that date.

8. On December 5, 1974, the defendant Jeffrey Martin was arrested on such bench warrant. On December 6, 1974 the defendant, pro se, obtained a reduction of his judgment to the sum of Two Thousand and Two Hundred and Twenty-five Dollars and Twenty-five Cents ($2,225.25) and was released from custody.

9. Respondent's failure to appear in Court on December 3, 1974 to either withdraw his appearance or defend his client with regard to the contempt citation and respondent's failure to direct his client to other counsel and withdraw his appearance on behalf of such client constituted a course of conduct prejudicial to the administration of justice.

Respondent's conduct also was neglectful of a legal matter which was entrusted to him.

10. Respondent's conduct further constitutes an intentional failure to seek the lawful objectives of his client through reasonably available means which are permitted by the Law and the Disciplinary Rules. Respondent further intentionally failed to carry out the contract of employment entered into with his client for professional services.

## COUNT IV

1. On October 29, 1974, summons was issued by the Hamilton County Circuit Court in Cause No. J5-4 entitled In the Matter of Judy Blackford and a hearing was set for October 31, 1974 at 10:00 a.m.

2. On October 31, 1974, Judy Blackford and her parents appeared in Court at which time the respondent entered his appearance on behalf of the respondent in that cause.

3. On December 10, 1974, a final hearing was set in such case to be held on January 6, 1975 and notice of such hearing was sent to counsel for all parties in compliance with Trial Rule 72 D.

4. Neither respondent nor Judy Blackford appeared in Court for the January 6, 1975 hearing. The respondent did not advise his client to attend the January 6, 1975 hearing and on such date the Court continued the case on its own motion.

5. On January 14, 1975, the respondent John Newton Merritt appeared in open Court with the Prosecuting Attorney with regard to the Blackford case and made certain stipulations and agreed upon January 21, 1975 at 2:00 p.m. for a trial date. Notice of such trial date was sent to all counsel for the parties in compliance with Trial Rule 72 D.

6. Neither respondent nor Judy Blackford appeared in Court for the hearing scheduled for January 21, 1975 and as a result thereof the Court fined respondent the sum of One Hundred Dollars ($100.00) and ordered the arrest of Judy Blackford.

7. On January 30, 1975 C. V. Milan, an attorney, entered his appearance on behalf of Judy Blackford. The rearrest order for Miss Blackford was withdrawn and the case was eventually concluded with Miss Blackford being placed upon probation.

8. The respondent was paid the sum of Five Hundred Dollars ($500.00) for representation by the Blackford

family. Prior to such payment the respondent had performed other legal services for such family which included representing Miss Blackford's two brothers on other matters. Respondent made no additional demands for payment from the Blackford family and no money was returned to the Blackfords by respondent.

9. Neither the Blackfords nor the Court were informed of the respondent's withdrawal from the case and as a result of respondent's withdrawal the Blackfords were required to hire a new lawyer, Miss Blackford faced rearrest and the Court was required to continue the matter from its previously established trial date.

10. Respondent's conduct as set forth above constitutes a course of conduct which was prejudicial to the administration of justice in that respondent's failure to appear for two trial dates caused unnecessary delay in the trial of the Blackford case. Respondent's conduct further constitutes a neglect of a legal matter which was entrusted to him.

## COUNT V

1. On June 13, 1974, the State of Indiana filed two Counts alleging Theft against Steven Lawless in the Hamilton Superior Court in Cause No. SCR-74-044 and a warrant was issued for such defendant's arrest.

2. The defendant retained David M. Adams, a lawyer in Noblesville, Indiana, as counsel which said representation lasted until October 18, 1974 when the said David M. Adams withdrew his appearance with the consent of the defendant.

3. On October 1, 1974, the case was set for pretrial conference on November 1, 1974 at 3:20 p.m.

4. On October 18, 1974, the respondent entered his appearance in the case for the defendant Steven Lawless.

5. On November 1, 1974, neither the respondent nor the defendant Steven Lawless appeared at the scheduled pretrial conference. A bench warrant was issued for Lawless and the respondent was ordered to show cause why he should not be held in contempt.

6. The defendant Lawless was arrested on the bench warrant and spent two to three days in custody before his release on December 23, 1974.

7. The defendant appeared in Court on December 30, 1974 as he had been ordered to do on December 23, 1974

and informed the Court that Mr. Merritt was still his attorney. The case was set for trial on April 7, 1975 at 9:30 a.m. and notice of such trial date was sent to respondent.

8. On March 14, 1975, Steven Lawless again appeared before the Court in person and without counsel and was advised by the Court that the defendant no longer represented him. On April 4, 1974, attorney John Culp entered his appearance on behalf of the defendant, Steven Lawless. At no time did the respondent file a motion requesting permission of the Court to withdraw his appearance on behalf of the defendant Steven Lawless.

9. The defendant Steven Lawless was never advised by respondent of the necessity of his appearance on November 1, 1974 for the pretrial conference.

10. The defendant never paid any sum toward respondent's fee in such case although respondent did receive the sum of Two Hundred Dollars ($200.00) from the defendant's mother-in-law. Respondent had represented the defendant and defendant's family in several other cases in the past for which he and they owed respondent money. Respondent's reason for terminating his representation of the defendant was that he had not been paid for such representation.

12. Respondent's conduct as set forth above constitutes a course of conduct prejudicial to the administration of justice in that scheduled Court hearings were continued unnecessarily. Respondent ceased representing Steven Lawless without taking reasonable steps to avoid foreseeable prejudice to the rights of his client and without giving due notice thereof to his client. Respondent's failure to appear for the pretrial conference and his failure to advise the defendant Steven Lawless to appear for such pretrial conference was neglect of a legal matter entrusted to the respondent.

## COUNT VI

1. On November 27, 1973, an action was commenced in the Hamilton Superior Court captioned James T. O'Brien vs. Orville Jones et al., Cause No. S73-603. This suit was a claim by a rider of a motorcycle who collided with a dog against the owner of the dog, Orville Jones, for damages sustained as a result of the collision.

2. The defendant in such case was initially represented by Frank E. Stevenson, an attorney in Noblesville, Indiana, who withdrew his appearance on behalf of the defendant on

July 18, 1974. Following the withdrawal of Mr. Stevenson's appearance the defendant was defaulted.

3. On January 14, 1975, the respondent entered his appearance in such case on behalf of the defendant and filed a motion to set aside the default.

4. On January 15, 1975, the following entry was made by the Court in such case: Come now the parties, in person and before (sic) counsel and by agreement: 1. Defendant's motion to set aside default sustained. 2. Stipulation entered into by and between the parties in open Court. 3. Trial of cause continued. 4. Defendants ordered to answer Interrogatories and to file Answer to Plaintiff's Amended Complaint on or before February 4, 1975. Notice of such entry was sent to the parties in compliance with Trial Rule 72 D.

5. The respondent did not prepare an Answer to Plaintiff's Amended Complaint nor file the Interrogatory Answers as agreed and ordered on January 15, 1975. On February 11, 1975, a hearing was held on the failure of the defendant to comply with the order to answer the Amended Complaint and answer Interrogatories. Neither the defendant nor the respondent appeared and a default judgment was granted the plaintiffs against the defendant in the amount of Five Thousand Dollars ($5,000.00).

6. The defendant paid the respondent the sum of Two Hundred Dollars ($200.00) within approximately two weeks of respondent's appearance in such case. The agreement between respondent and defendant was that respondent's fee for representation in such case was to be the sum of Four Hundred Dollars ($400.00) total.

7. Upon receiving notice of the entry of the default judgment, the defendant made repeated attempts to contact respondent but he was unable to reach respondent nor obtain a forwarding address. The respondent never refunded any portion of the Two Hundred Dollars ($200.00) retainer fee to the defendant nor did he provide the defendant with his file with regard to such case.

8. Respondent's services to the defendant aside from appearances in Court consisted of three consultations totaling at most an hour and a half and research with regard to defenses which might have been utilized at trial. The respondent was advised by defendant that he would rather take bankruptcy than have to pay the judgment which was sought by plaintiffs in such case. Respondent admitted that he knew that the Interrogatory Answers and Answer to Amended Complaint were due and that he did not prepare

the same for filing and states only that he felt the defendant did not have a defense and that the judgment would probably be entered which would result in the defendant taking bankruptcy. The respondent never withdrew his appearance on behalf of the defendant nor advised defendant that he would no longer represent him in such case.

9. As a result of the entry of the default judgment against the defendant in such case, the defendant was forced to hire another attorney who filed bankruptcy for him and obtained a discharge of the judgment. The defendant was required to pay such other attorney the sum of Three Hundred Dollars ($300.00) for his services with regard to the bankruptcy.

10. Respondent's conduct as set forth above constituted a course of conduct prejudicial to the administration of justice in that respondent failed to protect the interests of his client by failing to prepare and file an answer to Plaintiff's Amended Complaint and an Answer to Plaintiff's Interrogatories which resulted in respondent's client having a default judgment rendered against him. Such conduct by the respondent constituted neglect of a legal matter entrusted to him and constituted an intentional failure on the part of respondent to carry out a contract of employment entered into between himself and his client for professional services.

## COUNT VII

1. On March 25, 1972 an irrevocable living trust was created by Norris E. Carey because of her advanced age. The sole trustee of said trust was the respondent.

2. The trust indenture empowered the trustee, *inter alia,* to invest the trust property and to pay the net income at least quarterly to the settlor during her life. Any property purchased with trust funds was to be held in trust in the place of that disposed of and the property from any such reinvestment was likewise to be paid to the settlor during her life. The trust further provided that upon the death of the settlor, the trust fund was to be conveyed by the trustee in equal shares to Daniel Gene Gehring, Ashley Vicki Shannon and Sharon Louise Whisnant, or to the survivor of them. The testamentary beneficiaries were relatives of the settlor. Ashley Vicki Shannon was also respondent's legal secretary and was romantically involved with the respondent.

3. The trust further provided that the trustee was to receive no compensation for performing the duties reposed

in him by the trust instrument either during the settlor's life or following her death.

4. During June of 1974, the respondent became involved in a private business venture with Ashley Vicki Shannon and two of respondent's clients, Arthur F. Taggert and Joseph A. Schoffield, II, to purchase a tavern business. The aforesaid four individuals acquired all of the outstanding stock of Hamilton Catering Service, Inc., an Indiana corporation which owned a Hamilton County Liquor License.

5. On July 26, 1974, Overseas Investment Corporation Limited, an Indiana corporation whose stock was owned by Taggert and Schoffield, entered into an installment sales contract to purchase real estate located in Hamilton County commonly known as 35 South Ninth Street, Noblesville, Indiana. Such real estate was to be used by the purchasers for the purpose of operating the tavern utilizing the liquor license owned by Hamilton Catering Service, Inc. Such contract was executed by Overseas Investment Corporation Limited under the signatures of respondent, Ashley Vicki Shannon, Joseph A. Schoffield, II, and Arthur F. Taggert and contains a provision under which the aforesaid four individuals personally guaranteed all of the payments to be made under the contract between the sellers and the buyer Overseas Investment Corporation Limited.

6. Such real estate contract called for a downpayment of Eight Thousand Dollars ($8,000.00). Neither respondent nor Ashley Vicki Shannon owned any interest in Overseas Investment Corporation Limited at that time and it was agreed between respondent, Ashley Vicki Shannon, Joseph A. Schoffield, II, and Arthur F. Taggert, that such downpayment would be paid in full by Taggert and Schoffield out of funds coming to them as a first draw on a major construction project in which they were engaged.

7. Neither Taggert nor Schoffield received the construction funds above mentioned and were otherwise unable to provide the downpayment money for the real estate contract. On July 26, 1974, the respondent withdrew Eight Thousand Dollars ($8,000.00) from a savings account belonging to the Norris E. Carey Trust and purchased a cashier's check payable to the real estate contract sellers which said cashier's check showed on its face that the remitter of the funds was Overseas Investment Corporation Limited.

8. Prior to withdrawing such funds, the respondent did not have the permission of Norris E. Carey to make such use of any trust funds. Respondent did discuss the use of the money with Daniel Gene Gehring, a trust beneficiary,

who gave his permission. Respondent did not discuss the use of such money with Sharon Louise Whisnant nor Ashley Vicki Shannon nor did he have any information as to the financial status of Overseas Investment Corporation Limited.

9. It was respondent's intention when such sum was withdrawn from the Carey Trust to loan this sum of money to Overseas Investment Corporation Limited for a few days until Taggert and Schoffields' construction money became available at which time respondent intended to repay the Carey Trust the full amount of Eight Thousand Dollars ($8,000.00) plus interest. On making the loan to Overseas Investment Corporation Limited, the respondent did not obtain from Overseas Investment Corporation Limited nor Taggert or Schoffield a promissory note, stock certificates or any other evidence of indebtedness or security showing the receipt of the funds from the Trust.

10. During the fall and winter of 1974, the respondent's law practice income declined and respondent began spending long hours working in the tavern business and not attending to his law practice. After making the loan of the Eight Thousand Dollars ($8,000.00) to Overseas Investment Corporation Limited, Taggert and Schoffield did not receive any monies with regard to their construction project and the monies taken from the Carey Trust were not replaced.

11. On January 17, 1975, the respondent withdrew an additional sum of One Thousand Dollars ($1,000.00) from the Carey Trust Savings Account. The respondent cannot account for the disposition of such One Thousand Dollar ($1,000.00) withdrawal and has no records that show how the funds were expended. It is respondent's belief that such funds were either used to establish a checking account for Norris E. Carey or were used as a loan to him for the purpose of reestablishing his law practice. Neither Norris E. Carey nor any of the trust beneficiaries gave their permission for respondent to utilize such One Thousand Dollars ($1,000.00) as a loan to himself to reestablish his law practice.

12. In February or March of 1975, the respondent left the State of Indiana and took up residence in the State of Alabama. Before leaving the State of Indiana, the respondent did not replace any of the monies he had taken from the Carey Trust.

13. The American National Bank at Noblesville, Indiana, was appointed temporary trustee of the Norris E. Carey Trust on March 5, 1975. On March 6, 1975, the American National Bank, as temporary trustee, instituted a civil

action against the respondent in the Hamilton County Superior Court, Cause No. S75-182, for the recovery of the trust assets taken by the respondent on July 26, 1974. A default judgment was entered against the respondent in that cause on May 9, 1975.

14. In late August or September of 1975, the respondent offered to repay the Eight Thousand Dollars ($8,000.00) to the trust if the default judgment was set aside, if the lawsuit was dismissed and if all claims of the trust and its beneficiaries against respondent were released. The respondent did not have sufficient assets within the State of Indiana upon which the temporary trustee could proceed in order to collect the judgment. The temporary trustee, therefore, agreed to accept the respondent's offer and the civil action brought against respondent by the temporary trustee was dismissed on September 8, 1975. Of the Eight Thousand Dollars ($8,000.00) the respondent repaid to the trust in return for the setting aside of the default judgment, dismissal of the civil action and waiver of all claims against him, the trust received only the sum of Seven Thousand Dollars ($7,000.00) as One Thousand Dollars ($1,000.00) was paid for attorney's fees by the temporary trustee which said distribution of funds was part of the settlement approved by the Hamilton Superior Court.

15. The respondent removed a total of Nine Thousand Dollars ($9,000.00) from the Carey Trust and converted at least Eight Thousand Dollars ($8,000.00) of those funds to his own use. As a result of the settlement negotiated between respondent and the temporary trustee, the Carey Trust has suffered a loss of at least One Thousand Dollars ($1,000.00) and possibly as high as Two Thousand Dollars ($2,000.00) considering the One Thousand Dollars ($1,000.-00) withdrawn by respondent on January 17, 1975 for which he cannot account.

16. The respondent utilized the Eight Thousand Dollars ($8,000.00) which he withdrew from the Carey Trust Savings Account on July 26, 1974 in order to further his own personal business venture and not for the benefit of the trust.

17. The respondent believed, prior to withdrawing the Eight Thousand Dollars ($8,000.00) from the Carey Trust, that he had authority to make such use of the trust assets according to Indiana Law and the terms of the trust instrument.

18. Respondent's conduct as set forth above constituted a course of illegal conduct involving moral turpitude in that

the respondent breached his fiduciary responsibilities. Respondent's conduct further involved dishonesty. Respondent further failed to maintain complete records of all funds and other properties of the settlor which came into his possession and failed to render appropriate accounts with regard to the same.

## COUNT VIII

1. The respondent filed a complaint for damages in Hamilton Circuit Court, Cause No. C74-138, on March 26, 1974 on behalf of the plaintiff Kenneth Dean Sparks. The complaint was filed against John E. Fisher after Mr. Fisher had stopped payment on a Sixty Dollar ($60.00) check he had written to Mr. Sparks for certain services Sparks had performed. On April 9, 1974 the defendant filed an answer and counterclaim asking for damages from the plaintiff.

2. On November 29, 1974, the Special Judge in such cause, the Honorable Paul Johnson, Jr., set the case for trial on March 26, 1975 at 9:30 a.m. and notice of such setting was served on parties in compliance with Trial Rule 72 D.

3. On December 3, 1974, the defendant filed a Request for Admissions.

4. The respondent subsequently left the State of Indiana before trial without notifying his client, Kenneth Dean Sparks, of his departure. The respondent made no arrangements for another attorney to protect his client's interest and Sparks had to hire other counsel to represent him in the lawsuit. Respondent did not prepare an answer to defendant's Request for Admissions which was filed on December 3, 1974.

5. Respondent's actions as set forth above constituted a course of conduct prejudicial to the administration of justice as well as neglect of a legal matter entrusted to him in that respondent failed to protect his client's interest by filing an answer to the defendant's request for admissions and left the jurisdiction without notifying his client that he would be unable to appear to represent him at the scheduled trial date and failed to direct his client to counsel who could represent the client at such trial. Respondent's conduct further constituted an intentional failure to carry out a contract of employment entered into between respondent and the client for professional services.

## CONCLUSIONS OF LAW
### COUNT I

1. Respondent's conduct as set forth in the Findings of Fact with regard to Count I is a violation of Disciplinary Rule 1-102(A)(4) of the Disciplinary Rules of the Indiana Supreme Court.

2. Respondent's violation of Disciplinary Rule 1-102(A)(4) is a violation of Disciplinary Rule 1-102(A)(1).

### COUNT II

1. Respondent's conduct as set forth in the Findings of Fact with regard to Count II is a violation of Disciplinary Rule 1-102(A)(4) of the Disciplinary Rules of the Indiana Supreme Court.

2. Respondent's violation of Disciplinary Rule 1-102(A)(4) is a violation of Disciplinary Rule 1-102(A)(1).

### COUNT III

1. Respondent's conduct as set forth in the Findings of Fact with regard to Count III constitutes a violation of Disciplinary Rule 1-102(A)(5).

2. Respondent's conduct as outlined in the Findings of Fact with regard to Count III is a violation of Disciplinary Rule 6-101(A)(3).

3. Respondent's conduct as outlined in the Findings of Fact with regard to Count III constitutes a violation of Disciplinary Rules 7-101(A)(1) and 7-101(A)(2).

4. Respondent's conduct as set forth in the Findings of Fact with regard to Count III constitutes a violation of his oath as an Attorney admitted to the Bar of the Supreme Court of the State of Indiana.

### COUNT IV

1. The respondent's conduct as set forth in the Findings of Fact with regard to Count IV constitutes a violation of Disciplinary Rule 1-102(A)(5).

2. Respondent's conduct as set forth in the Findings of Fact with regard to Count IV constitutes a violation of Disciplinary Rule 6-101(A)(3).

3. Respondent's conduct as set forth in the Findings of Fact with regard to Count IV constitutes a violation of his oath as an Attorney admitted to the Bar of the Supreme Court of the State of Indiana.

## COUNT V

1. Respondent's conduct as set forth in the Findings of Fact with regard to Count V constitutes a violation of Disciplinary Rule 1-102 (A) (5).

2. Respondent's conduct as set forth in the Findings of Fact with regard to Count V constitutes a violation of Disciplinary Rule 2-110 (A) (2).

3. Respondent's conduct as set forth in the Findings of Fact with regard to Count V constitutes a violation of Disciplinary Rule 6-101 (A) (3).

4. Respondent's conduct as set forth in the Findings of Fact with regard to Count V constitutes a violation of respondent's oath as an Attorney admitted to the Bar of the Supreme Court of the State of Indiana.

## COUNT VI

1. The respondent's conduct as set forth in the Findings of Fact with regard to Count VI constitutes a violation of Disciplinary Rule 1-102 (A) (5).

2. Respondent's conduct as set forth in the Findings of Fact with regard to Count VI constitutes a violation of Disciplinary Rule 6-101 (A) (3).

3. Respondent's conduct as set forth in the Findings of Fact with regard to Count VI a violation of Disciplinary Rule 7-101 (A) (2).

4. Respondent's conduct as set forth in the Findings of Fact with regard to Count VI constitutes a violation of respondent's oath as an Attorney admitted to the Bar of the Supreme Court of the State of Indiana.

## COUNT VII

1. The respondent's conduct as set forth in the Findings of Fact with regard to Count VII constitutes a violation of Disciplinary Rule 1-102 (A) (3).

2. Respondent's conduct as set forth in the Findings of of Fact with regard to Count VII constitutes a violation of Disciplinary Rule 1-102 (A) (4).

3. Respondent's conduct as set forth in the Findings of of Fact with regard to Count VII constitutes a violation of Disciplinary Rule 1-102 (A) (1).

4. Respondent's conduct as set forth in the Findings of of Fact with regard to Count VII constitutes a violation of Disciplinary Rule 9-102 (B) (3).

## COUNT VIII

1. Respondent's conduct as set forth in the Findings of Fact with regard to Count VIII constitutes a violation of Disciplinary Rule 1-102 (A) (5).

2. Respondent's conduct as set forth in the Findings of Fact with regard to Count VIII constitutes a violation of Disciplinary Rule 6-101 (A) (3).

3. Respondent's conduct as set forth in the Findings of Fact with regard to Count VIII constitutes a violation of Disciplinary Rule 7-101 (A) (2).

It now becomes the duty of this Court to impose an appropriate disciplinary sanction by reason of the acts of misconduct found under the eight count, amended complaint filed in this cause. As previously stated by this Court, in determining the appropriate discipline to be imposed, consideration is given the nature of the ethical violation; the specific acts of the respondent; this Court's responsibility to preserve the integrity of the Bar of this State; the risk, if any, to which we will subject the public by permitting the respondent to continue in the profession or to be reinstated at some future date; and the deterrent effect the imposition of discipline has on the Bar in general. *In re Wood,* (1976) 265 Ind. 616, 358 N.E.2d 128; *In re Noel,* (1976) 265 Ind. 98, 350 N.E.2d 623; *In re Lee,* (1974) 262 Ind. 439, 317 N.E.2d 444.

The misconduct found in this case is extremely serious and clearly demonstrates a patent disregard for the standards of professional conduct expected of all attorneys in this State. The respondent has breached his fiduciary responsibilities, neglected and improperly abandoned his clients, and repeatedly discredited himself, as well as the Bar in general. The evidence demonstrates that the respondent is dishonest and untrustworthy.

In light of the very serious misconduct found in this case, this Court, in order to protect the public in general from future conduct of this nature and in order to preserve the integrity of the legal profession, must impose the maximum disciplinary sanction available. Accordingly, by reason of

the misconduct found under the amended complaint filed in this cause, it is now ordered that the respondent be and he hereby is disbarred as an attorney in the State of Indiana.

Costs of these proceedings are assessed against the respondent.

NOTE.—Reported at 363 N.E.2d 961.