IN THE MATTER OF WILLIAM F. SNYDER, JR.

[No. 874S165. Filed December 28, 1977.]

*John C. Ruckelshaus*, of Indianapolis, for respondent.

*David L. Copenhaver*, of Indianapolis, for the Indiana Supreme Court Disciplinary Commission.

PER CURIAM—This is a disciplinary proceeding before this Court on an amended two-count complaint filed by the Disciplinary Commission pursuant to Admission and Discipline Rule 23, § 12. In accordance with the procedure established under Admission and Discipline Rule 23, a Hearing Officer was appointed in this cause, a hearing was conducted, and the Hearing Officer has filed with this Court findings of fact and conclusions of law. Neither the respondent nor the Disciplinary Commission has petitioned for review of these findings and conclusions.

Under Count I of the Amended Complaint, the respondent is charged with violating Disciplinary Rules 6-101 (A) (3) and

7-101(A)(1) of the Code of Professional Responsibility and the *Oath of Attorneys* for admission to the Bar of the State of Indiana.

After examining the matters which have been submitted in this cause, the Court now adopts and accepts as its own the findings of fact filed by the Hearing Officer. These findings establish that the respondent, a duly admitted attorney in this State, was retained in July 1971 to represent Earl Stark in a divorce proceeding. This proceeding was finalized on October 4, 1971, and the respondent was paid in full for his services. During October 1971, Stark advised the respondent of his financial problems and it was determined that a petition in bankruptcy should be filed. An agreement was entered whereby the respondent would be paid his entire fee of 301 dollars before the petition was filed. Stark made his last payment to the respondent on December 10, 1971 and was given a receipt indicating that the fee was "paid in full." About the same time, Stark notified respondent of his creditors and signed a number of papers which Stark believed to be concerning his bankruptcy petition.

During 1972 Stark attempted to contact the respondent on more than one occasion. Often Stark could not reach the respondent, and, if reached, the respondent simply advised Mr. Stark that "things were being taken care of." In late 1972 or early 1973, Stark's wages were garnisheed by a creditor. Stark called the respondent and was again advised that "it would be taken care of." The entire debt of 350 dollars was satisfied by way of this garnishment.

On June 11, 1973, Stark filed a grievance against the respondent. The bankruptcy petition was finally filed by the respondent on July 27, 1973. Mr. Stark was discharged in bankruptcy on May 3, 1974.

In light of the above findings, this Court now concludes that respondent's acts constituted neglect of a legal matter entrusted to the respondent and a failure by respondent to seek

the lawful objectives of his client. Accordingly, this Court now finds that respondent's conduct constituted violations of the Code of Professional Responsibility as charged in Count I of the amended complaint.

Under Count II of the amended complaint, the respondent is charged with violating Disciplinary Rules 1-102(A)(4) and (5), 6-101(A)(3), and 7-101(A)(2) and (3) of the Code of Professional Responsibility and the *Oath of Attorneys.*

This Court now adopts as its own the findings of the Hearing Officer which establish that Mrs. Nancy McGinnis, in the spring semester of 1975, failed a required course in pediatrics at Indiana University-Purdue University at Indianapolis which precluded her taking the State Nursing Board Examination in July 1975. In an effort to appeal from this failing grade, Mrs. McGinnis requested and was granted a hearing before the Executive Committee of the Indiana University School of Nursing on May 2, 1975. She met with respondent on the morning of May 2nd and he went with McGinnis to the meeting; however, due to University policy, the respondent was not allowed to enter the meeting nor actively represent Mrs. McGinnis during the meeting. McGinnis was allowed to retake the course during the 1975 summer session but again received a failing mark.

In June 1975 McGinnis advised respondent of her second failing mark and presented respondent with evidence in support of a claim of discriminatory practices on the part of the School of Nursing. On the 24th of June respondent met with McGinnis and advised her that the earliest possible date that he could give attention to this matter was August 1975. Upon McGinnis' insistence, respondent agreed to seek immediate relief from a Court so that McGinnis could take the July examination.

Throughout July, August, and September, McGinnis contacted the respondent's office on numerous occasions and was advised by respondent's secretary that a suit had been filed.

Respondent had told his secretary that such suit had been filed and that she was to inform those calling of its filing. This message was relayed to University Counsel.

In September 1975, McGinnis and her mother went to respondent's office and were advised by the respondent's associate that no suit had been filed; the associate further declined to represent Mrs. McGinnis and advised her to employ other counsel. McGinnis was given her file and retained new counsel. A compromise agreement was reached whereby the University set up a special course for McGinnis on the condition that no lawsuit would be filed. McGinnis then passed the course and the Nursing Board Examination in February 1976.

In light of the above findings of fact this Court now concludes that in his representation of Mrs. McGinnis the respondent engaged in conduct prejudicial to the administration of justice, engaged in conduct which adversely reflected on his fitness to practice law, neglected a legal matter entrusted to him, failed to carry out a contract of employment for legal services and prejudiced his client during the course of the professional relationship. Accordingly, this Court now further finds that the respondent's conduct constituted violations of the Code of Professional Responsibility as charged under Count II of the amended complaint.

Having found misconduct, it now becomes the duty of this Court to impose an appropriate disciplinary sanction. The findings in this case demonstrate that the respondent has not met the standard of representation contemplated under the Code of Professional Responsibility. He has neglected the people who sought his professional assistance and by his misconduct damaged the interest of individuals he was obligated to assist.

This case also presents the type of conduct which demeans the entire legal profession. The respondent in this case deliberately misrepresented the status of pending matters to his

clients and an opposing party on more than a few occasions. As this Court has mentioned before, the attorney-client relationship is bonded together by trust. An attorney cannot effectively work in the best interest of an individual unless there is trust and, by the same token, an attorney cannot expect to receive this trust unless his professional conduct warrants it. The deliberate misrepresentations of respondent, as demonstrated in this case, can only lead to the complete destruction of trust and, in the eyes of the people adversely affected, the tarnishing of the entire legal profession.

In light of the above considerations, we conclude that in order to preserve the integrity of the legal profession and to demonstrate this Court's disfavor in the misconduct found in this case, a substantial period of suspension is warranted. Therefore, by reason of the violations of the Code of Professional Responsibility found under Counts I and II of the amended complaint, it is now ordered that the respondent be, and he hereby is, suspended from the practice of law in the State of Indiana for a period of not less than two years, beginning February 1, 1978, and that he pay the costs of these disciplinary proceedings.

NOTE.—Reported at 370 N.E.2d 899.