IN THE MATTER OF ROBERT R. GARRETT.

[No. 973S174. Filed July 13, 1978.]

Robert R. Garrett, Pro Se, for respondent.

David L. Copenhaver, of Indianapolis, for the Indiana Supreme Court Disciplinary Commission.

PER CURIAM—This proceeding is now before the Court on a two-count amended complaint filed by the Disciplinary Commission of the Supreme Court pursuant to Admission and Disciplinary Rule 23, § 12. In accordance with the procedure established under Admissions and Discipline Rule 23, a Hearing Officer was appointed, a hearing was held, and the Hearing Officer has filed findings of fact and conclusions of law. Neither the respondent nor the Disciplinary Commission have petitioned for review of these findings.

The charges of misconduct under Count I of the amended complaint grow out of respondent's conduct as an attorney for an estate. The respondent is charged with violating Disciplinary Rules 6-101(A)(3), 2-110(A)(2) and (3), 2-110 (c)(5), 7-101(A)(2) and (3) and 1-102(A)(4) and (5) of the Code of Professional Responsibility and Canons 15, 30, 11, 44, 22, and 32, of the Canons of Professional Ethics.

This Court now adopts as its own the Hearing Officer's findings of fact under Count I. The findings establish that on April 11, 1958, Herman Linder, an Indiana resident, died testate leaving his two cousins, Ruth Cornwell and Harvey Ristow as the sole beneficiaries of his estate. Under the will, Cornwall, an Illinois resident, was named "Administrator"; the funeral director who handled the Linder funeral, Mr. J. J.

McGaun, was named "Co-Administrator". Cornwall employed the respondent to represent the estate of Linder. On April 22, 1958, the Linder will was admitted to probate in Lake Superior Court, Room 2.

On December 12, 1958, the Administrators filed a *Petition for Partial Distribution to Devisees and Partial Payment of Attorneys Fees* requesting $750.00 as partial attorneys fees. The petition was granted by the Court. On November 10, 1959, the respondent filed a Petition for Allowance of Attorney's Fees and was granted $1,500.00 in fees. According to the second petition all that remained to be done was to "wind up the affairs of the estate preparatory to making final distribution and the closing of said estate. . . ."

On November 12, 1959, Cornwall received a letter from the respondent stating that the estate would be closed in approximately three weeks. However, the closing did not occur.

One of the reasons for the delay in closing was the sale of four undeveloped lots in Northwestern Indiana. These lots were being purchased on contract by the deceased prior to his death from Warner Realty Company. At the time of his death, the deceased had $1,177.00 equity in the property.

On May 2, 1958, the Respondent began communicating with Warner Real Estate regarding these lots. On January 7, 1959, the Respondent, on behalf of the estate, forwarded $563.00 to Warner Real Estate. In return Warner conveyed the four lots in question to the estate by warranty deed. This deed was delivered to the Respondent by Warner, but was not recorded in Porter County, Indiana. The property was taxed in the name of Warner Realty. The Respondent did not inform Cornwall or Linder of this transaction.

Between August 1964 and the filing of a grievance by Cornwall on February 29, 1972 with the Disciplinary Commission of this Court; Cornwall tried on several occasions to contact the respondent and ascertain the status of the estate, including the mailing of letters to the respondent, by reg-

istered mail, which were received by the respondent and were unanswered.

On May 9, 1975, the Superior Court, on its own revoked the Letters of Administration and closed the estate. Neither Cornwall nor Ristow received notice of this and were not so informed.

In light of the above findings of fact this Court now concludes that the respondent's conduct in this matter constituted neglect of an entrusted legal matter in violation of Disciplinary Rule 6-101 (A) (3) ; constituted an intentional failure to carry out a professional contract for employment to the prejudice of his client in violation of Disciplinary Rules 7-101 (A) (2) and (3), and constituted conduct prejudicial to the administration of justice in violation of Disciplinary Rule 1-102 (A) (5).

Under Count II of the Amended Complaint the respondent is charged with violating Disciplinary Rules 1-102 (A) (4), (5), and (6) ; 6-101 (A) (3) ; and 7-101 (A) (1), (2), and (3), of the Code of Professional Responsibility and the corresponding Canons of Professional Ethics.

This Court now adopts the Hearing Officer's findings of fact under Count II. These findings establish that on July 8, 1970, a Richard Critser was killed in a motorcycle accident. He was survived by his wife, Nancy Critser, and six children. At the time of his death, Mr. Critser owned two life insurance policies. One policy was as a result of his affiliation with the International Brotherhood of Teamsters and the other was obtained through his employer, Hennis Freight Lines, Inc., and the insurer, Puritan Life Insurance Company. The Puritan policy premiums were originally intended to be paid by payroll deduction. The Puritan Policy was issued in April, 1970. Premiums were deducted from Richard Critser's paychecks on April 10, May 10, and June 10, 1970. During early July, Puritan cancelled the payroll deduction plan and began billing its policyholders directly.

Upon Mr. Critser's death, Mrs. Critser went to the office of the respondent. She gave the respondent the two life insurance policies and a copy of her husband's death certificate. She asked the respondent to notify the insurers of her husband's death and proceed to collect the proceeds. He agreed to do so. On July 14, 1970, Puritan's agent sent a letter to Mr. Critser stating that he owed back premiums in the amount of One Hundred and Twenty Dollars ($120.00) and for forward that amount immediately each month, ten days before the due date on all future premiums. This was the first notice Mrs. Critser had of the past due premiums and the new billing procedure. Mrs. Critser advised the respondent of the letter and sought his direction. He advised her to pay One Hundred and Twenty Dollars ($120.00) to the insurer. Having never received any portion of the claim against Puritan, Mrs. Critser advised the Respondent to proceed with a lawsuit on her behalf, if necessary.

On September 25, 1970, Mrs. Critser, at the request of the Respondent, paid him a retainer in the amount of Five Hundred Dollars ($500.00). The respondent informed Mrs. Critser that this sum would be used for court costs and his services. He informed Mrs. Critser that the matter would be filed in Federal Court, Hammond, Indiana. There would be two defendants, Puritan Insurance and Hennis Freight Lines. Mrs. Critser continued to contact the Respondent and was told that suit had been filed. When she inquired about time and future trial dates she was told it was Puritan's dilatory actions which was the cause for delay.

During this period the insurer of the second policy on Mr. Critser's life, the Teamster's Union, contacted Mrs. Critser and inquired about the absence of a claim being filed with them. She promptly took a copy of her husband's death certificate to them and was paid the benefits under the policy.

Mrs. Critser first contacted the respondent regarding her husband's death in July 1970. Between then and March 1973, when she asked him to withdraw from the matter she was

told on several occasions that a suit had been filed against Puritan. She was never told that she had no valid claim or that she should seek the advice of other counsel. In March 1973, Mrs. Critser informed the respondent that she was seeking other counsel. She went to the respondent's office and picked up her file. Shortly thereafter, she took it to the office of another attorney. She informed this second attorney of the pending litigation in Federal Court and her desire to collect the proceeds from her deceased husband's life insurance policy. This attorney wrote Puritan and discovered Puritan had never been notified that Mr. Critser had died and had considered the policy lapsed for non-payment of premium and further discovered that no suit had been filed in this matter. Thus he prepared and filed a complaint on September 25, 1973, in the U.S. District Court, entitled *Nancy Critser versus Puritan Life Insurance Co., Edmond Vanston d/b/a Vanston and Associates, and Hennis Freight Lines, Inc.* As defenses, Puritan asserted:

1. Failure to pay premiums.
2. Failure to file claim under policy conditions.
3. Failure to file suit within the applicable statute of limitations.

The suit was settled in December 1974. Puritan paid Mrs. Critser Five Thousand Dollars ($5,000.00) and the matter was dismissed. On April 19, 1974, a suit entitled *Nancy Critser versus Robert Garrett* was filed in Lake Superior Court, Room 3. The complaint was based on two grounds:

1. Alleged errors in judgment in the payment of premiums after the death of Mr. Critser.
2. Failure to file a claim with Puritan or a suit against Puritan as requested by his client, Mrs. Critser.

The respondent was served, but failed to answer or appear and on July 23, 1974; a default judgment was entered against him. On December 13, 1974, a hearing on the question of damages was held. Again, the Respondent failed to appear and

a judgment in the amount of Twenty-six Thousand Dollars ($26,000.00) was entered against him.

On February 26, 1974, proceedings supplemental were initiated on behalf of Mrs. Critser. These proceedings involved several hearings and orders to produce documents. Throughout the course of these proceedings, the respondent failed to comply with the orders to produce and failed to appear at hearings after receiving service. On July 18, 1975, a bench warrant was issued for his arrest. This was served on September 19, 1975; the Respondent appeared before the Court and was released on his own recognizance. At the next setting, the respondent again failed to appear, resulting in another bench warrant being issued for his arrest on November 24, 1975. Eventually, the respondent and the parties settled the action for the sum of Five Thousand Dollars ($5,000.00).

In light of the above findings, this Court now concludes that the respondent's conduct relative to his representation of Nancy Critser involved deceit and misrepresentation, was prejudicial to the administration of justice and adversely reflected on the respondent's fitness to practice law. Additionally this Court concludes that the respondent's representation of Mrs. Critser constituted neglect of an entrusted legal matter, an intentional failure to seek the lawful objectives of a client, an intentional failure to carry out a contract of employment entered into with a client for professional services, and an intentional damaging of a client during the course of employment. Accordingly, this Court now finds that the respondent has violated the Disciplinary Rules of the Code of Professional Responsibility as charged under Count II of the amended complaint filed in this cause.

Having found misconduct, this Court must impose an appropriate disciplinary sanction. It is readily apparent from an examination of the matters submitted in this cause that the respondent has neglected his clients to a substantial degree. In fact, the respondent's neglect has prejudiced and damaged

the interests of his clients. People sought his professional help, but instead were misled, neglected and financially injured. The respondent's acts have not only harmed the people he was obligated to assist, but also caused damage to the legal profession in general. This Court is required under the Constitution of the State of Indiana to preserve the integrity of the legal profession and protect the public from the harm demonstrated in the present cause.

With the foregoing considerations in mind, we now conclude that a period of suspension is warranted. Therefore, by reason of the violations of the Code of Professional Responsibility found under the two-count amended complaint filed in this cause, it is now ordered that the respondent be, and he hereby is, suspended from the practice of law in the State of Indiana for a period of not less than one year, beginning August 15, 1978, and that he pay the costs of these disciplinary proceedings.

NOTE.—Reported at 377 N.E.2d 1368.