IN THE MATTER OF MELVIN B. THORNBURG.

[No. 876S243. Filed October 11, 1978.]

*Frederick R. Spencer,* of Anderson, for respondent.

*Thomas Opsut, David L. Copenhaver,* of Indianapolis, for Indiana Supreme Court Disciplinary Commission.

PER CURIAM—This matter is before the Court on an amended three-count verified complaint filed by the Disciplinary Commisson of the Indiana Supreme Court pursuant to Admission and Discipline Rule 23, § 12. A Hearing Officer was appointed, the cause was heard, and the Hearing Officer has filed his findings of fact, conclusions of law, and recommendation. The Respondent has petitioned for review of the findings and recommendations. Both the Respondent and the Disciplinary Commission have submitted briefs relative to the issues now before the Court and various members of the Bench and Bar in the Respondent's community have filed a statement, as Friend of Court, pertaining to the Respondent.

Under Count I of the amended complaint, the Respondent is charged with engaging in conduct prejudicial to the administration of justice, neglecting a legal matter entrusted to him, intentionally failing to seek the lawful objectives of a client, intentionally failing to carry out a contract of employment and intentionally prejudicing or damaging a client during the course of a professional relationship, such acts being in violation of Disciplinary Rules 1-102(A)(5), 6-101 (A)(3), 7-101(A)(1), 7-101(A)(2), and 7-101(A)(3) of the Code of Professional Responsibility.

After examining all matters which have been submitted in this cause, this Court now finds that the Respondent was employed by Orville Johnson and Barbara Johnson to handle their defense in a civil damage case filed on January 31, 1972, in Madison Superior Court. On October 21, 1972, pursuant to Respondent's advice, Johnson gave Respondent $140.08 to be used as follows: $92.08 as one-half of the settlement for plaintiff's claim, $13.00 as Johnson's portion of the court

costs and $35.00 as Johnson's portion of Respondent's attorney fees. The remaining half of the claim and cost was to be paid by the co-defendant, Milan. Respondent was to pay the settlement money to the plaintiff's attorney on behalf of Johnson. He gave Johnson a signed release and a statement indicating that the money was to be turned over to plaintiff's attorney. Respondent did not forward the money as promised nor did he inform Johnson of this fact and, for a time, attempted to collect the other half of the damage claim from the co-defendant, Milan. On February 11, 1975, judgment was entered against Johnson in the amount of $92.08. Respondent again did not notify Johnson nor did he turn over the settlement money. On February 11, and May 12, 1975, plaintiff's attorney, aware that Johnson may have given his portion of the damage claim to Respondent, mailed letters to Respondent requesting payment and indicating that proceedings supplemental were being considered. Respondent made no response to these letters, did not forward the money, and again did not notify Johnson that proceedings supplemental were being considered.

On June 12, 1975, the plaintiff instituted the proceedings supplemental and on June 17, 1975, Johnson was served with process. Johnson hired another attorney and filed a cross-complaint and Motion for joinder of Respondent on June 20, 1975. On July 11, 1975, at a hearing on said cross-complaint and Motion, the Court found for defendant Johnson and against Respondent, awarding defendant Johnson $100.00 in damages, $16.75 as court costs, and $300.00 as attorney fees.

In light of the above findings, this Court now concludes that, by holding a client's settlement funds for over two and one-half years without forwarding this money to its intended purpose, the Respondent neglected a legal matter. The above noted facts further establish that the Respondent failed to seek the lawful objectives of his client, failed to carry out a contract of professional employment, and damaged the interests of his client. His

conduct was prejudicial to the administration of justice. Accordingly, this Court now concludes that in the course of Respondent's professonal representation of Orville Johnson, the Respondent violated Disciplinary Rules 1-102(A)(5), 6-101(A)(3), and 7-101(A)(1), (2), and (3), as charged under Count I of the amended complaint filed in this cause.

Under Count II of the amended complaint, the Respondent is charged with neglecting a legal matter entrusted to him and the intentional failure to seek the lawful objectives of a client in violation of Disciplinary Rules 6-101(A)(3) and 7-101(A)(1).

After examining the matters submitted in this cause, this Court now finds that during July, 1975, Respondent was retained by James S. and Mary A. Poore to file a bankruptcy petition for each of them. They paid $400.00, which was credited toward representation in the bankruptcy proceeding; $102.00 was for court costs. Respondent informed the Poores that a hearing would be held in the Delaware County Courthouse, in Muncie, Indiana, on November 20, 1975, when, in fact, there was no hearing scheduled or held. On November 22, 1975, in response to an inquiry, Respondent informed the Poores that their petition had been filed and gave the Poores a cause number. The petition had not been filed on November 22nd and the cited cause number was another proceeding being handled by the Respondent. During this period of time and until February, 1976, the Respondent's office had been closed by the I. R. S. due to a dispute over the payment of the withholding tax. On March 9, 1976, the Poore's were advised by another attorney that no petition had been filed and that the cause number given them was for another case. On March 20, 1976, the Respondent filed the petiiton in bankruptcy and the Poores were eventually discharged in bankruptcy on June 23, 1976.

In light of the above findings of fact, this Court now concludes that the Respondent's conduct in representing the

Poores constituted neglect of a legal matter and the intentional failure to seek the lawful objectives of a client in violation of Disciplinary Rules 6-101(A) (3) and 7-101(A) (1).

Under Count III of the amended complaint filed in this cause, the Respondent is charged with neglecting a legal mat-met entrusted to him and not promptly paying a client's funds when requested, in violation of Disciplinary Rules 6-101(A) (3) and 9-102(B) (4) of the Code of Professional Responsibility.

After examining the matters which have been submitted relative to Count III in this cause, this Court now finds that on April 27, 1974, Hallie Edwards, an Indiana resident, died testate. On June 12, 1974, her will was admitted to probate in Madison Superior Court and, pursuant to the terms of the will, Respondent was named executor. He also was attorney for the estate. Under the terms of the will the assets of the estate passed to Bud and Mary Jo Nichols, husband and wife.

On June 21, 1974, Respondent, as executor of the estate, received from the Anderson Banking Company, $8,448, this being the major asset of the estate. Respondent deposited these funds in the Citizens Banking Company of Anderson in an account entitled the "Hallie Edwards Estate Account". During 1975, the Respondent, without any approval, removed the funds from the Edwards Estate Account and deposited such funds into his own personal savings account. He then used these funds for personal expenses, the primary expense being an I. R. S. lien against his office caused by the Respondent's failure to pay withholding taxes.

On July 13, 1976, Mary Jo Nichols petitioned to have Respondent removed as executor. Since the opening of the estate on June 12, 1974, to the date of said petition, Respondent had failed to close the estate within the statutory period of time, show cause or explain to the beneficiary why the estate had

not been closed, file an inventory of the estate assets, or pay the debts of the estate, specifically the funeral expenses. Respondent was ordered to appear in court and to make an accounting on August 4, 1976. On August 3, 1976, Respondent filed a "Petition for Enlargement of Time in Which to File Accounting." The Court, on August 19, 1976, entered an order finding just cause for the removal of Respondent as Executor of the estate, ordered his removal, appointed Mary Jo Nichols as Executrix and ordered Respondent to turn over the assets to the Executrix no later than August 25, 1976. On September 21, 1976, Respondent communicated to the attorney representing Mary Jo Nichols that he (Respondent) had not been able to secure the funds comprising the assets of the estate and that he did not know when he would be able to produce same. On September 24, 1976, the successor Executrix filed a petition seeking the collection of the estate assets from Respondent. After October 13, 1976, Respondent paid to the Executrix from his personal funds, in the form of a money order, an amount equal to the assets of the estate.

This Court now concludes that the above findings of fact establish that the respondent, in his capacity as attorney for the Hallie Stewart Estate, neglected a legal matter entrusted to him, in violation of Disciplinary Rule 6-101(A)(3), and failed to promptly pay to his client funds which the client was entitled to receive, in violation of Disciplinary Rule 9-102(B)(4).

In his petition for review, the Respondent asserts in this cause that several mitigating factors are present, i.e., the respondent's good character, his expression of remorse, the fact that this incident is not likely to recur, the lack of fraudulent intent, and the fact that the misconduct in this case was committed under circumstances of extreme pressure. From an examination of the matters which have been submitted, it does appear that there is evidence to support the respondent's assertions. The Respondent has expressed remorse, he has undergone per-

sonal hardships, and his friends and professional associates do consider the Respondent to be a man of good character.

These factors have been considered by the Court in mitigation; such matters, do not, however, excuse the misconduct nor lessen the severity of impact of the Respondent's conduct on his clients. The findings of this Court clearly establish that Respondent's negligent and intentional acts have led to the prejudice and harm of the individuals he was obligated to assist and defend. He has seriously breached the trust placed in him by his clients and the Bar and by such breach brought discredit on the entire legal profession. It is tragic that an individual finds himself in the position of the Respondent; yet, it is the duty and responsibility of this Court to safeguard the public from attorneys who, for whatever reason, have demonstrated that they are not fit to have the trust that forms the attorney-client relationship. *In re Connor* (1976), 265 Ind. 610, 358 N.E.2d 120.

This Court now concludes that the mitigating factors in this case do suggest that at some future date the Respondent might be able to return to the practice of law and meet expected standards of professional behavior. Thus, we have decided not to impose disbarment in the present case. The misconduct in this case is, however, serious, and this Court must impose a disciplinary sanction of sufficient measure to preserve the integrity of the legal profession and reflect the serious nature of the misconduct. Accordingly, this Court now concludes that a substantial period of suspension is warranted. It is therefore ordered that, by reason of the violations of the Disciplinary Rules found under Counts I, II, and III of the amended complaint filed in this cause, the respondent is hereby suspended from the practice of law in the State of Indiana for a period of not less than three years, beginning October 20, 1978.

Costs of these proceedings are assessed against the Respondent.

Hunter, J., dissents as to the imposition of discipline in this cause and would not impose a public reprimand.

NOTE.—Reported at 381 N.E.2d 855.