**In the Matter of Charles A. WALTON.**

**No. 1079S277.**

Supreme Court of Indiana.

Nov. 2, 1981.

Michael Riley, Riley & Riley, Indianapolis, for respondent.

Thomas J. Opsut, Indianapolis, for Indiana Supreme Court Disciplinary Commission.

PER CURIAM.

This cause is brought by the Disciplinary Commission of the Indiana Supreme Court on a seven count Amended Verified Complaint. The Hearing Officer appointed pursuant to Admission and Discipline Rule 23 has heard this case and has submitted his findings of fact. The Respondent has petitioned for review, but has not filed a brief.

■ Upon examination of the matters submitted before us we now find that Charles A. Walton, Respondent herein was admitted to the Indiana Bar on May 11, 1976.

Relative to the charges under Count I of the Complaint, we find that in April, 1976, Respondent was retained by Joyce Wilkins (Wilkins) to pursue a personal injury claim against AID Ambulance Service. Wilkins and Respondent entered into an employment contract whereby Respondent was to receive one-third of any recovery obtained. Respondent then directed Wilkins to speak with Respondent's associate, Harold Bickham, to complete some paperwork and to arrange for an appointment with a physician.

By letter dated October 5, 1976, Respondent's office informed Wilkins that Hartford Insurance Company (Hartford), AID's insurer, had offered to settle her claim for One Hundred Fifty Dollars. Wilkins immediately communicated to Respondent's office that the offer was unacceptable and she rejected it. On December 6, 1976 Hartford made a second offer to settle Wilkins' claim for Four Hundred Fifty Dollars. The Respondent never communicated this offer to Wilkins. Sometime later, however, Wilkins received a check from the Respondent for Two Hundred Fifty Dollars. Wilkins returned this check to the Respondent, notifying him that she rejected this offer also.

Hartford heard nothing from the Respondent regarding the Four Hundred Fifty Dollar offer to settle and consequently stopped payment on its check on March 8, 1977. On April 21, 1977, a representative of Hartford contacted the Respondent and scheduled an appointment with him to discuss a settlement in the Wilkins matter. Respondent cancelled the appointment as well as numerous subsequent appointments made by Hartford.

After Wilkins had not heard from the Respondent for sometime, Wilkins attempted to contact either the Respondent or Bickham. Wilkins was informed that Bickham was no longer with the office and the Respondent was not available to speak with her. The Respondent thereafter failed to keep several appointments Wilkins made to consult with him. The Respondent never filed a lawsuit on behalf of Wilkins, no settlement was ever obtained and the statute of limitations on Wilkins' claim ran out on January 19, 1978. Hartford closed its file on the Wilkins matter on April 11, 1978.

The conduct exhibited in the foregoing findings constitutes neglect of a legal matter, failure to seek the lawful objectives of a client, failure to carry out a contract of employment entered into with a client and prejudice and damage to the client in violation of Disciplinary Rules 6–101(A)(3) and 7–101(A)(1)(2) and (3). By these actions Respondent engaged in conduct which adversely reflects on his fitness to practice law in violation of Disciplinary Rule 1–102(A)(6) of the *Code of Professional Responsibility for Attorneys at Law.*

Under the charges of Count II we find that in November, 1972, Dorothy F. Strong was injured at her job. Soon, thereafter, Strong employed Respondent to pursue a claim for workmen's compensation on her behalf before the Industrial Board and agreed to a contingency fee of one-third of recovery.

In December, 1972, Strong was offered Four Hundred Dollars ($400.00) by her employer to settle the matter. The Respondent advised Strong not to accept this offer and further advised his client that he would file a claim with the Industrial Board. Sometime in 1973, after Strong had completed a Blue Cross-Blue Shield insurance subrogation document, the Respondent advised Strong that he had filed a claim with the Industrial Board and was attempting to obtain a hearing date from the Industrial Board concerning her claim for compensation. In 1975, Strong contacted the Respondent to inquire if the statute of limitations was in danger of running in her case

and at that time the Respondent again stated that her claim had been filed with the Industrial Board. In September, 1977, Strong had a chance meeting with the Respondent outside of her mother's home at which time the Respondent advised her that "all Courts are closed now. But as soon as the Courts convene, I'm going to get this thing settled." In fact, the Respondent never filed the claim on behalf of Strong and the statute of limitations has expired on such claim.

The foregoing findings establish that Respondent neglected a legal matter entrusted to him, failed to carry out a contract of employment, failed to seek the lawful objectives of his client and prejudiced and damaged his client in violation of Disciplinary Rules 6–101(A)(3) and 7–101(A)(1)(2) and (3). Such misconduct is further violative of Disciplinary Rule 1–102(A)(4) and (6) in that it is conduct involving dishonesty and deceit and conduct which adversely reflects on Respondent's fitness to practice law.

Relative to the charges under Count III of the Verified Complaint, we find that in September, 1976, the Respondent was retained by Frank and Mary Viers, the Defendants in a cause of action arising from an automobile accident entitled, *Clarence Lee and Mona Leiter v. Frank and Mary Viers,* Cause No. M876–1551, Marion Municipal Court, Room 8. Mary Viers paid the Respondent a One Hundred Dollar retainer fee on September 11, 1976 to secure his services.

The Viers requested that the Respondent file a Counterclaim on their behalf and later were assured by Respondent that the Counterclaim had been filed. In fact, the Respondent neither entered his appearance on behalf of the Viers nor filed a Counterclaim.

Sometime prior to March 1, 1978, Mary Viers received notice from the Court that her case would go to trial on March 1, 1978. On that date, the Respondent failed to appear for the trial and the Viers were required to defend themselves without the benefit of counsel. On March 8, 1978, judg-

ment was entered in the Viers' case against the Defendant Frank Viers in the amount of Seven Thousand Dollars.

The Respondent returned the ($100.00) retainer fee to the Viers subsequent to their filing a grievance with the Disciplinary Commission.

From the foregoing findings we conclude that Respondent once again neglected a legal matter entrusted to him, failed to carry out a contract of employment, failed to seek the lawful objectives of his clients and thereby prejudiced and damaged his clients. Furthermore, Respondent's conduct involves dishonesty and fraud; it proved to be prejudicial to the administration of justice and adversely reflects on his fitness to practice law. Such misconduct violates Disciplinary Rules 1–102(A)(4)(5) and (6), 6–101(A)(3) and 7–101(A)(1), (2) and (3) of the *Code of Professional Responsibility for Attorneys at Law.*

As to the allegations under Count IV of the Verified Complaint, we find that in March, 1975, the Respondent was retained by Melinda Matheny (Matheny) for the purpose of establishing her rights to the proceeds of a Ten Thousand Dollar insurance policy on her deceased father's life.

On May 7, 1975, suit was filed in a matter styled as *Franklin Matheny v. The Lincoln National Life Insurance Company v. Melinda Matheny,* Cause No. S575–558, Marion County Superior Court, Room 5, and the Respondent is shown as attorney of record for Melinda Matheny. Sometime in May, 1976, the Respondent had a conference with Matheny and her mother wherein the Respondent proposed and recommended a settlement which provided for a 60–40 split of the insurance proceeds, Four Thousand Dollars going to Matheny and Six Thousand Dollars going to her Uncle Franklin. Matheny, in the presence of her mother, unequivocally refused and rejected the settlement offer and advised the Respondent she wanted to proceed to trial.

Thereafter, Respondent refused to keep appointments with Matheny; she became dissatisfied with Respondent's services and requested that he withdraw from the case,

returning the file to her. This dissatisfaction was made known to the Respondent prior to May 18, 1976, and was confirmed in a certified letter sent to the Respondent on May 21, 1976, requesting that the Respondent withdraw from her case and return her file.

On May 18, 1976, the Respondent, as attorney for Matheny, signed an Agreed Entry and Stipulation for Dismissal in the insurance case which provided for the 60–40 settlement which Matheny had previously rejected. The Respondent had neither the consent nor the authority of his client, Matheny, to settle the case and, in fact, knew his client opposed the settlement.

On May 18, 1976, the Respondent signed a receipt on behalf of Matheny for a check in the amount of Four Thousand Dollars representing her share of the alleged settlement. The Respondent never advised Matheny of his actions in settling the case or his receipt of the Four Thousand Dollar check. The Four Thousand Dollar check remained in the Respondent's possession uncashed from 1976 to 1980. The Respondent eventually returned the uncashed check to the Marion County Clerk's office.

After discharging the Respondent in May, 1976, Matheny retained attorney Kenneth Kern to represent her. Kern, after undertaking employment, discovered the Respondent's actions in settling the case. Kern was successful in having the Agreed Entry and Stipulation for Dismissal set aside.

Kern, like Matheny, was unsuccessful in recovering Matheny's file from the Respondent or in receiving any cooperation from the Respondent concerning the case, in spite of numerous requests.

In view of our findings under this Count we now conclude that Respondent failed to seek the lawful objectives of his client, failed to carry out a contract of employment and prejudiced and damaged his client in violation of Disciplinary Rules 7–101(A)(1) and (3). He also violated Disciplinary Rule 9–102(B)(1) by failing to promptly notify his client of the receipt of her

funds. These acts constitute further misconduct prohibited by Disciplinary Rules 1–102(A)(4)(5) and (6).

Counts V and VI having been dismissed during the course of the hearing of this cause, we now review the allegation of misconduct set out under Count VII. Upon examination of the matters now before the Court we find that Respondent was employed to represent Mrs. Charles E. Vaughn, Sr. in a small claims matter concerning a debt. Respondent recommended that she file bankruptcy, at which time Charles Vaughn paid Respondent a One Hundred Seventy-Five Dollar retainer fee to obtain a continuance of a small claims trial and file a petition in bankruptcy. Respondent failed to represent Mrs. Charles Vaughn in the aforementioned small claims matter, and he failed to prepare and file a bankruptcy petition.

After demand was made by Charles Vaughn, Respondent executed a check for One Hundred Seventy-Five Dollars dated June 22, 1979 and he delivered it to Charles Vaughn, the payee. When Charles Vaughn attempted to cash the check, he was unable to do so because Respondent's account lacked sufficient funds. The check was eventually made good by the Respondent in July, 1979.

We now further find that as charged in the Verified Complaint, the acts of the Respondent set out under Count VII constituted a failure to carry out a contract of employment for professional services, neglect of a legal matter, and conduct prejudicial to the administration of justice adversely reflecting on the Respondent's fitness to practice law. Accordingly, we find that the Respondent violated Disciplinary Rules 7–101(A)(2), 6–101(A)(3), and 1–102(A)(1), (5) and (6).

It is now necessary for this Court to assess an appropriate sanction, taking into account the nature of the violation, the specific acts of misconduct, this Court's responsibility to preserve the integrity of the Bar, and the risk, if any, to which we will subject the public by permitting the Respondent to continue in the profession or be reinstated at some future date. *In re*

*Crumpacker* (1978), 269 Ind. 630, 383 N.E.2d 36; *In re Vincent* (1978), 268 Ind. 101, 374 N.E.2d 40; *In re Tabak* (1977), 266 Ind. 271, 362 N.E.2d 475.

In the past, this Court has imposed discipline for professional neglect and an attorney's failure to seek the lawful objectives of his clients. See, *In re Thornburg* (1978), 269 Ind. 389, 381 N.E.2d 855; *In re Garrett* (1978), 268 Ind. 660, 377 N.E.2d 1368; *In re DeWitt* (1978), 268 Ind. 160, 374 N.E.2d 514; *In re Snyder* (1977), 267 Ind. 441, 370 N.E.2d 899; *In re Turner* (1977), 266 Ind. 625, 366 N.E.2d 166; *In re Merritt* (1977), 266 Ind. 353, 363 N.E.2d 961; *In re Connor* (1976), 265 Ind. 610, 358 N.E.2d 120. Unfortunately, as in most human endeavors, neglect, procrastination and nonaccomplishment are present in the legal profession. But in the legal profession, neglect produces a particularly pernicious consequence and it is for this reason that the Disciplinary Rules of this Court proscribe such conduct.

The present case epitomizes the harmful results of neglect. Statutes of 'limitations expired, lay parties were required to appear without the assistance of counsel, and parties' interests were abandoned through the unwanted settlement of claims. The findings in this cause indicate that the Respondent had a total disregard for the prejudicial consequences of his inaction. His clients were the victims of this disregard.

In view of the above considerations, this Court now finds that the strongest sanction available under the Constitution of the State of Indiana should be imposed to preserve the integrity of the legal profession and to protect the public from future acts of misconduct as found in this case. It is therefore ordered that by reason of the misconduct found in this cause the Respondent be, and he hereby is, disbarred as an attorney in the State of Indiana.

Costs of these proceedings are assessed against the Respondent.